UNDERWOOD et al. v. GERBER et al.

(Circuit Court, E. D. New York. February 13, 1889.

PATENTS FOR INVENTIONS—ANTICIPATION—MANIFOLD PAPER.

The claim in letters patent No. 348,072, August 24, 1886, to John T. and Frederick W. Underwood, for a composition for transfer surfaces for producing copies of type-writing, is for the coloring composition therein described for the manufacture of a substitute for carbon paper composed of a precipitate of dye-matter in combination with oil, wax, or oleaginous matter, substantially as set forth. That in letters patent No. 348,073, issued the same day to the the same persons, on an application bearing the serial number next succeeding that for the former patent, and the same date, for an improved reproducing surface for type-writing and manifolding, is for a sheet of material coated with a composition of precipitate of dye-matter, obtained as described, in combination with oil, wax, or oleaginous substance, substantially, etc. The composition in each is the same. *Held,* that the only advance of the latter patent is the spreading of the composition on paper, and that such patent is void for want of invention, and that a suit based solely upon it cannot be maintained.

In Equity.

Suit by John T. Underwood and Frederick W. Underwood against Henry Gerber and Anton Andreas to restrain the infringement of a patent.

*James A. Hudson,* for complainants, cited, to the point decided in opinion: *Manufacturing Co.* v. *Railroad Co.,* 22 Fed. Rep. 655; *McMillan* v. *Rees,* 1 Fed. Rep. 722.

*Briesen, Steel & Knauth,* for defendants, cited, to same point: *Mahn* v. *Harwood,* 112 U. S. 354, 5 Sup. Ct. Rep. 174; *Lock Co.* v. *Mosler,* 127 U. S. 354, 8 Sup. Ct. Rep. 1148; *Suffolk* v. *Hayden,* 3 Wall. 315; *Morris* v. *Huntington,* 1 Paine, 348; *Mathews* v. *Flowler,* 25 Fed. Rep. 830.

LACOMBE, J. This is a suit brought to restrain the defendants from infringing letters patent 348,073, granted to the complainants August 24, 1886, for "an improved reproducing surface for type-writing and manifolding." The circumstances of the case are peculiar, and present what seems to be a novel question. On March 22, 1886, the complainants filed their application, (known as "Serial Number 196,200.") The patent issued thereon, and now sued on, sets forth that the invention relates to an improved reproducing surface adapted to be employed for obtaining copies of type-writing, or other printed or written impressions by means of a type-writer or other printing device, or by the employment of a stylus or other writing means; that the transfer surface is spread upon a sheet or vehicle, and, when so applied, is adapted to be employed in place of the articles of trade commonly known and designated as "carbon papers," or "semi-carbon papers." The specification then proceeds as follows:

"('Carbon papers,' or 'semi-carbon papers') are employed by type-writers and others to produce copies of impressions either obtained by a machine or by a stylus or other writing means. In carrying out our invention, we em-

ploy in the manufacture of our improved transfer surface dye-wood solutions, or their active principles, which we filter and precipitate with alkalies and mineral salts, or with alkalies, acids, and mineral salts, or with acids or alkalies alone. After the solution has been filtered, the precipitate is removed from the filtering device, and dried. The precipitate is then mixed with lard-oil and wax, or their equivalents, and the mixture is then ground together in a warm state. The dye solutions we prefer to employ are obtained from logwood or hæmatoxylin, the active principle of logwood, Brazil wood, sapan wood, peach-wood, madder, or its active principle,— alizarine. The proportions we find to answer well in producing our improved surface are as follows: Take one pound of extract of logwood and dissolve the same in one gallon of water. Then add to the solution one pound of soda and one pound of mineral salt, using one of the salts of iron or copper, preferably sulphate of copper. The mixture thus obtained is then placed in a filter. After the solution has been filtered, the precipitate is removed from the device employed for filtering, and then dried, after which the precipitate is ready for use. To every two pounds of precipitate thus obtained we add one pound of oil and one pound of wax, and then grind the mixture, in a warm state, in what is commonly known as a 'paint' or other suitable grinding mill. The heated mixture thus obtained is then applied to tissue paper or other suitable paper or fabric by means of a sponge or other suitable transferring device. The paper or fabric to which our improved surface is to be applied is placed upon a heated table, by preference formed of iron, and heated by steam; but this may be varied. In place of employing oil or wax, or both combined, we can employ any other suitable oleaginous matter or combination of oleaginous matter having equivalent or approximately equivalent properties."

The invention having been thus described, the patentees claimed "a sheet of material or fabric coated with a composition composed of a precipitate of dye-matter, obtained as described, in combination with oil, wax, or oleaginous matter, substantially as and for the purposes set forth." On the same day (March 22, 1886, serial number 196,199) complainants also applied for a patent for a "composition for transfer surfaces for producing copies of type-writing," and letters patent therefor (No. 348,072) were issued to complainants on the same day as those sued on, —August 24, 1886. The specification sets forth that the invention relates to the process of producing a transfer surface adapted to be employed upon a sheet or vehicle to take the place of the articles of trade commonly known and designated as "carbon papers" or "semi-carbon papers." It then states that these papers are employed by type-writers or others to produce copies of impressions either obtained by a machine, or by a *stylus* or other writing means, and proceeds to describe the invention in the identical words used in the other patent, and quoted above. Having thus described their invention, the patentees claimed:

"The coloring composition herein described for the manufacture of a substitute for carbon paper, composed of a precipitate of dye-matter, in combination with oil, wax, or oleaginous matter, substantially as set forth."

This novel method of manifolding an invention was adopted, as complainants state, in order to comply with recent decisions of the patent-office, interpreting rule 41 of that office, and holding that where a person has "invented something in an art, or, as it is ordinarily called, 'a process,' also a machine for carrying out the process, and also the man-

ufacture or article which is produced in the operation or the process by the machine," he must take out three separate patents,—one for the process, one for the machine, and one for the product. *Ex parte Blythe,* 30 O. G. 1321; *Ex parte Herr,* 41 O. G. 463. Before those decisions the patent would have contained the common specification above quoted with two separate claims,—one for the process and resulting composition; the other for its combination with the paper. The complainants insist that their position is precisely the same whether their invention is covered by a single patent with a double claim, or by two separate patents. Whether this is so, under the circumstances of the particular case here presented, must be now determined.

The defendants insist that no invention is set forth in either patent, and that they do not infringe. For the purposes of the argument upon the preliminary objection, however, the converse of these propositions will be accepted. The present application is to restrain the defendants from continuing to infringe; and, for some unexplained and unaccountable reason, the complainants sue only on a single patent, and that, too, the one whose number would indicate that it was, in time of application and of issue, subsequent to the other. Having taken their stand solely upon this patent, what is their position towards defendants, who make the composition of matter described in both patents, and combine paper with it, as indicated in the one sued on? When differentiated from each other, it is found that the only step in advance which the higher-numbered patent suggests is the spreading upon paper of the composition described in the lower-numbered patent. In view of the earlier patents and publications which have been put in evidence,—in fact, considering only what is within the common knowledge of all who have for upwards of a generation manifolded writing by the use of a paper coated or impregnated with some pigment,—it is difficult to see what novelty or invention could be detected in merely taking a coloring substance already known and applying it to paper. If the patent for the composition of matter forming the coloring substance had been granted to John Doe the day before complainants applied for their patent covering the application of that substance to paper, the latter would be clearly void for want of novelty or invention. It follows that if the first-numbered patent were held by an assignee of the complainants, near or remote, he could not be held an infringer of the second patent. Complainants conceded upon the argument that an assignee could not be so held except for the combination of paper with the coloring substance for the purpose named, and such a combination is clearly old. The complainants insist that their position is precisely the same is if they held a single patent with two claims,—one for the process or composition of matter producing the coloring substance; the other for the combination of that substance with paper. This might be so if they could be considered as holding both patents. But in this suit they have carefully abstained from declaring upon the first patent, or even in any way referring to it. Its issuance is only known to the court through the defendants, who set it up in defense. The complainants base their claim to a monopoly solely upon the second

patent. As that single patent, tried by the usual tests, may stand or fall, the case which they make out upon their complaint must also stand or fall. One who seeks to enforce the rights secured to him by a patent is an Ishmaelite,—his hand against every one, and every one's hand against him. His adversary may avail of every publication of the fruits of human invention—by letters patent, by printed books, by actual public use—as if they were his own. When offered in evidence they may prove not conflicting, not anticipatory, or be found otherwise immaterial; but, for what they are worth, they are the common property of all who are called upon to justify their acts in the face of a complainant patentee. The holder of the patent sued upon in this case must submit it to comparison with the first patent as if that first patent were outstanding. By not declaring upon it as its present owner, he leaves it to the defendants, to be availed of as if it were the property of a stranger.

What then is his position? At the very time when his patent was issued the composition of matter which enters into his combination with paper was known, and the right to exclude all persons from making it was conferred upon the holder of another patent. Upon the holder of the patent sued upon was conferred the right to exclude all others from combining paper with this composition, but in view of the state of the art such a grant was void. The cases cited by complainant (*Manufacturing Co.* v. *Railroad Co.*, 22 Fed. Rep. 655, and *McMillan* v. *Rees*, 1 Fed. Rep. 722) do not apply. There it was held that the additional combination which the original inventor sought to secure by his later patent was in fact a real step in advance. It was held that the description of his invention in the earlier patent would not preclude him from securing his additional claim, because that additional claim covered a patentable invention. "Whether two patents," says the court in the case last cited, "cover the same invention, must be determined by the tenor and scope of their claims, not by the description in the specifications." Here, as we have seen, the combination which the second patent sought to cover was not patentable. This suit, based upon it alone, must therefore fail. To the holder of the first patent, whoever he may be, alone belongs the right to exclude all others from making the new composition of matter, the only invention which (if the other issues in the case be decided against the defendants) was sufficiently novel to warrant the granting of letters patent. Usual decree for defendant.