## UNDERWOOD *v.* GERBER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NEW YORK.

No. 217. Argued April 19, 1893. — Decided May 1, 1893.

In a suit in equity brought on letters patent No. 348,073, granted August 24, 1886, on an application filed March 22, 1886, to John T. Underwood and Frederick W. Underwood, for a "reproducing surface for type-writing and manifolding," the claim being for "A sheet of material or fabric coated with a composition composed of a precipitate of dye-matter, obtained as described, in combination with oil, wax, or oleaginous matter, substantially as and for the purposes set forth," it appeared that letters patent No. 348,072, had been granted to the plaintiffs August 24, 1886, on an application filed March 22, 1886, the claim of which was for "The coloring composition herein described for the manufacture of a substitute for carbon-paper, composed of a precipitate of dye-matter, in combination with oil, wax, or oleaginous matter, substantially as set forth." The suit was not brought on No. 348,072. The only difference in the two patents was that No. 348,073 was for spreading upon paper the composition described in No. 348,072: *Held* that, in view of earlier patents and publications, there was no novelty in taking a coloring substance already known and applying it to paper; that the omission to claim in No. 348,073, the composition of matter described in it was a disclaimer of it, as being public property; and that there was no invention in applying it to paper, as claimed in No. 348,073.

THE case is stated in the opinion.

*Mr. Livingston Gifford* for appellants.  *Mr. James A. Hud-son* filed a brief for same.

*Mr. Arthur v. Briesen* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the Eastern District of New York, by John T. Underwood and Frederick W. Underwood against Henry Gerber and Anton Andreas, founded on the alleged infringement of letters patent No. 348,073, granted to the plaintiffs August 24, 1886, on an application filed March 22, 1886, for a "reproducing surface for type-writing and mani-folding."

The specification reads as follows :

"Our invention relates to an improved reproducing-surface adapted to be employed for obtaining copies of type-writing or other printed or written impressions by means of a type-writer or other printing device, or by the employment of a stylus or other writing means.

"Our improved transfer-surface is spread upon a sheet or vehicle, and when so applied is adapted to be employed in place of the articles of trade commonly known and desig-nated as 'carbon paper' or 'semi-carbon paper,' which are employed by type-writers and others to produce copies of im-pressions either obtained by a machine or by a stylus or other writing means.

"[In carrying out our invention we employ in the manu-facture of our improved transfer-surface dye-wood solutions or their active principles, which we filter and precipitate with alkalies and mineral salts, or with alkalies, acids, and mineral salts, or with acids or alkalies alone.  After the solution has been filtered the precipitate is removed from the filtering device and dried.  The precipitate is then mixed with lard-oil and wax or their equivalents, and the mixture is then ground together in a warm state.

" The dye solutions we prefer to employ are obtained from logwood or hæmatoxylin, the active principle of logwood, Brazil wood, sapan wood, peach wood, madder, or its active principle — alizarine.

" The proportions we find to answer well in producing our improved surface are as follows: Take one pound of extract of logwood and dissolve the same in one gallon of water, then add to the solution one pound of soda and one pound of mineral salt, using one of the salts of iron or copper, preferably sulphate of copper. The mixture thus obtained is then placed in a filter. After the solution has been filtered the precipitate is removed from the device employed *for filtering* and *then* dried, *after which the precipitate is ready for use.* To every two pounds of precipitate thus obtained we add one pound of oil and one pound of wax, and then grind the mixture in a warm state in what is commonly known as a 'paint' or other suitable grinding mill. The heated mixture thus obtained is *then* applied to tissue-paper or other suitable paper or fabric by means of a sponge or other suitable transferring device.

" The paper or fabric to which our improved surface is to be applied is placed upon a heated table, by preference formed of iron, and heated by steam; but this may be varied.

" In place of employing oil or wax, or both combined, we can employ any other suitable oleaginous matter or combination of oleaginous matter having equivalent or approximately equivalent properties.] "

The claim is as follows:

" A sheet of material or fabric coated with a composition composed of a precipitate of dye-matter, obtained as described, in combination with oil, wax, or oleaginous matter, substantially as and for the purposes set forth."

The answer sets up as defences want of novelty and noninfringement. There was a replication, proofs were taken, and the case was brought to a hearing before Judge Lacombe, who entered a decree dismissing the bill. His opinion is reported in 37 Fed. Rep. 682. The plaintiffs have appealed to this court. Since the appeal was taken, Frederick W. Under-

wood has died, and John T. Underwood and Hannah E. Underwood, as his executors, have been substituted as co-appellants, with the surviving appellant, John T. Underwood.

Among the proofs introduced by the defendants was a patent, No. 348,072, granted by the United States to the same persons to whom No. 348,073 was granted, dated August 24, 1886, on an application filed March 22, 1886, the specification of which states as follows : " Our invention relates to the process of producing a transfer-surface adapted to be employed upon a sheet or vehicle to take the place of the articles of trade commonly known and designated as ' carbon papers' or ' semi-carbon papers,' which are employed by type-writers or others to produce copies of impressions either obtained by a machine or by a stylus or other writing means." Then the specification proceeds in the same words that are contained in brackets in the foregoing specification of No. 348,073, leaving out the words that are in italics, and changing the word " paint " to " paint-mill."

The claim of No. 348,072 is as follows :

" The coloring composition herein described for the manufacture of a substitute for carbon paper, composed of a precipitate of dye-matter, in combination with oil, wax, or oleaginous matter, substantially as set forth.".

This suit was not brought on No. 348,072. The defendants have made the composition of matter described in both of the patents, and have combined paper with it as indicated in No. 348,073. The only difference in the two patents is that No. 348,073 is for spreading upon paper the composition described in No. 348,072.

The opinion of the Circuit Court says that in view of the earlier patents and publications put in evidence, it was difficult to see what novelty or invention there was in taking a coloring substance already known and applying it to paper ; that, if No. 348,072 had been granted to some person the day before the plaintiffs applied for No. 348,073, the latter would clearly be void for want of novelty or invention ; that, if No. 348,072 were held by an assignee of the plaintiffs, near or remote, he could not be held as an infringer of No. 348,073 ;

that an assignee of No. 348,072 could not be so held except
for the combination of paper with the coloring substance for
the purpose named; that such a combination was old; that
the plaintiffs insisted that their position was the same as if
they held a patent with two claims, one for the composition
of matter producing the coloring substance, and the other for
the combination of that substance with paper; that this might
be so, if they could be considered as holding both of the
patents, but in the suit they had abstained from declaring on
No. 348,072, or even referring to it; that its issue was known
to the court only through the defendants, who set it up in
defence; that the plaintiffs based their claim to a monopoly
solely upon No. 348,073; that, as that patent might stand or
fall, so the case which they made out upon their bill must
also stand or fall; that the holders of No. 348,073 must sub-
mit it to a comparison with No. 348,072 as if the latter patent
were outstanding; that thus, at the time when No. 348,073
was issued, the composition of matter which enters into the
combination with paper was known, and the right to exclude
all persons from making such composition was conferred upon
the holder of No. 348,072; that the right to exclude all per-
sons from combining paper with that composition was con-
ferred upon the holders of No. 348,073, but, in view of the
state of the art, such a grant was void; that the combination
which No. 348,073 sought to cover was not patentable; that
this suit, being based upon that patent alone, must, therefore,
fail; and that, to the holder of No. 348,072, whoever he
might be, belonged the right to exclude all others from mak-
ing the new composition of matter, the only invention which
(if the other issues in the case were decided against the de-
fendants) was sufficiently novel to warrant the granting of
letters patent.

This opinion was filed February 13, 1889; and on March
20, 1889, the plaintiffs moved the court for leave to amend
their bill and to take further proofs. The court made an
order on that day, that, on the payment of the defendants'
costs on the final hearing, the plaintiffs should have leave to
amend their bill by the insertion of apt words, whereby they

should allege their ownership, and the infringement by the defendants, of letters patent No. 348,072; that, on the service of the amended bill, the defendants should answer, plead, or demur, and after replication proofs should be taken, strictly limited to the questions arising on No. 348,072, and the case should stand for final hearing on all the issues; but that, if the plaintiffs failed to pay such costs within ten days after taxation, or failed to file their amended bill within ten days after paying such costs, the bill should be dismissed. The plaintiffs did not pay such costs or amend their bill, and the decree of dismissal was entered on April 26, 1889.

We are of opinion that the decree of the Circuit Court must be affirmed. There was no patentable novelty or invention, in view of the earlier patents and publications put in evidence, in applying an existing coloring substance to paper.

In the English patent granted to Ralph Wedgwood in 1806, there is described a carbonated paper, as follows: "I make use of a prepared paper, which I call duplicate paper. This is made by thinly smearing over any kind of thin paper with any kind of oil, preferring those kinds of oil which are least liable to oxygenizement, or to be evaporated by heat;" and it is said: "The ink made use of in this mode of writing consists of carbon, or any other coloring substance, and finely levigated in any kind of oil. . . . Or coloring matter of any kind and in any other medium or vehicle may be used, provided that medium be such as will admit of the coloring matter being transferred to the duplicate and writing paper; some coloring substances may likewise be used without any medium or vehicle."

In the English patent granted to Charles Swan and George Frederick Swan, in February, 1856, a black coloring matter is described, applicable to the purposes of writing, dyeing, or staining; and it is said that the inventors employ an extract of logwood, treated with bichromate of potash, or with perchloride of mercury, subcarbonate of potash, chlorate of potash, and spirit of ammonia; and, also, "the said coloring matter may be obtained in a liquid form by introducing the salts above mentioned into a liquid extract of logwood, and

straining or otherwise purifying, the fluid in any suitable manner; or the said coloring matter may be obtained in a solid form by combining the aforesaid salts with a solid preparation of extract of logwood, or by evaporation or distillation from the liquid coloring matter above described, and the solid coloring matter may be kept on hand till required, and reduced to a liquid form by dilution with any suitable proportion of water. And the coloring fluid obtained in any of the modes hereinbefore set forth, in the form of an ink, may be converted into a copying fluid by the addition of any saccharine or other thickening ingredients hitherto employed, or which may be found applicable; it may also be obtained from the solid coloring matter by any suitable process."

The United States patent granted to Charles Cowan, May 4, 1869, for an improvement in the preparation of copying-paper, says: "I first prepare a mixture of the following ingredients: Boiled linseed-oil, two parts; spirits of turpentine, one part; copal varnish, one part. With this compound I smear the paper thinly and evenly on one side, and allow it to soak and dry for about half an hour; then I apply the coloring matter, which I prepare as follows: For black, I take ivory-black, four parts; pure black lead, four parts; Prussian blue, one part." He then gives sundry recipes for different colors, and says: "My copying-paper is applicable to making copies of letters, designs, or characters of any desired description."

In *Miller* v. *Brass Co.*, 104 U. S. 350, 352, it is said: "The claim of a specific device or combination, and an omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed. It is a declaration that that which is not claimed is either not the patentee's invention, or, if his, he dedicates it to the public."

In *Mahn* v. *Harwood*, 112 U. S. 354, 360, 361, it is said: "The taking out of a patent which has (as the law requires it to have) a specific claim, is notice to all the world, of the most public and solemn kind, that all those parts of the art, machine, or manufacture set out and described in the specifi-

cation, and not embraced in such specific claim, are not claimed by the patentee — at least, not claimed in and by that patent. . . . So far as that patent is concerned, the claim actually made operates in law as a disclaimer of what is not claimed."

As No. 348,073 does not claim the composition of matter, although it describes it, that composition must be regarded as disclaimed, and as being public property, and there was no invention in applying it to paper, as claimed in the patent sued on. *Decree affirmed.*