### H. W. JOHNS MFG. CO. v. ROBERTSON et al.

(Circuit Court, S. D. New York. August 24, 1898.)

1. PATENTS—PRIORITY—PRESUMPTION FROM NUMBERS.
    Where two patents are issued to the same person on the same date, covering practically the same invention, there is no presumption from the numbers as to which was issued first, and neither will be held an anticipation of the other; but the patentee or owner may elect upon which he will rest, and the other will be declared inoperative.

2. SAME—ANTICIPATION—COVERING FOR STEAM PIPES.
    The Pierce reissue, No. 10,376, as to claim 1, for "a covering for pipes, boilers, etc., consisting of layers of paper so secured together at intervals as to form air spaces," was not anticipated by prior inventions in which porous or fibrous materials were used, nor by the Reed patent, No. 171,425, for a paper covering, but without air spaces.

3. SAME—CANCELLATION OF PATENT.
    The Pierce reissue, No. 10,375, for a covering for steam pipes, being for practically the same invention as No. 10,376, issued on the same date to the same patentee, and which is herein sustained, *held* inoperative, and its assignment or sale prohibited.

This is a suit in equity for infringement of a patent. On final hearing on pleadings and proofs.

Edmund Wetmore, for complainant.
Hugh C. Lord, for defendants.

LACOMBE, Circuit Judge.    The bill is filed for infringement of claim 1 of reissued letters patent No. 10,376, dated August 28, 1883, to James D. Pierce, for covering for steam pipes.    The original is No. 252,400, dated January 17, 1882.    The specification sets forth that the invention relates to pipes, boilers, etc.    Referring to the drawings, the specification proceeds as follows:

"A represents a covering composed of two or more layers of paper, a, which may be varied in number according to the thickness desired; and these layers may be either corrugated, indented, or plain.    I make the pipe covering by wrapping the paper about a mandrel, and cementing or otherwise securing each layer to that immediately below it, as shown at A', A', A', A', Figs. 3 and 4, at intervals. The structure may now be cut open by a knife or saw through the center of the cemented line, and the structure slipped off the mandrel; and, as the edges of the layers of which it is composed are securely fastened together, it may be packed and transported without injury.    If my covering is designed for a flat surface, I merely secure flat layers of paper to each other in lines, A', and through these make the cuts which divide the covering into blocks or sheets.    As the layers which compose my improved covering are only secured together in lines through which the dividing cuts are to be made, there will be left between the layers at other points (those between the secured portions) a great deal of space for noncirculating or dead air; and this gives to my covering, *if corrugated or indented,* a maximum power to resist the passage of heat through it, and, *if plain, a resistance considerably above the maximum of a covering composed of layers secured together over substantially their entire surface.*    I am aware that paper covering has been made for pipes, etc.;" but the layers of which this covering was composed were cemented to each other throughout the entire structure, and the covering therefore was so

dense that its nonconducting properties were very greatly lessened. My covering, except at the points, A', is as full of air spaces, almost, as hair or sponge, and may be manufactured entirely at the shop, to be cut to the proper size either in the shops, or wherever the covering is to be applied."

The first claim only is involved. It reads:

"(1) A covering for pipes, boilers, etc., consisting of layers of paper so secured together at intervals as to form air spaces, substantially as set forth."

The reissue differs from the original solely by the insertion of the passages italicized in the above quotation. Comparing the language of the two descriptions, it may be readily understood why the inventor deemed it advisable to indicate more sharply the particular merit of his invention, viz. the artificial production of numerous air spaces in a pipe covering of paper without employing other materials; such air spaces being so arranged that the air therein is not free to circulate. For some unexplained reason (probably because of some arbitrary rule of the patent office), instead of allowing a reissue, with appropriate claims, the office on the same day allowed two separate reissues,—the one above quoted, and another, numbered 10,375, which purports to cover practically the same invention, only not restricted as to the composition of the nonconducting sheets. This practice of so-called "divisional issue" has been most unfortunate for patentees. Witness the result in Underwood v. Gerber, 149 U. S. 224, 13 Sup. Ct. 854. And, as was to be expected, the defendants contend that No. 10,376 is anticipated by No. 10,375. Fortunately, in the case at bar it will not be necessary to deprive the inventor wholly of his patent because the patent office saw fit to split it into two. The rule laid down in Electrical Accumulator Co. v. Brush Electric Co., 2 C. C. A. 682, 52 Fed. 130, may be applied. Complainant's covering has the advantages of being fully prepared in suitable lengths at the shop, of being light, compact, efficient, cheap, and readily adjustable, and has commended itself to the trade, and gone into considerable use. Of course, it was well known in the art that confined air was a good nonconductor. The air spaces found in loose, fibrous material, such as felt and hair, had been availed of. In some instances, by the use of paper in connection with the loose, fibrous material, partitions or bulkheads had been introduced into the structure. In the manufacture of refrigerators (an analogous art) successive air chambers had been constructed, which had been made air-tight by lining the partitions with paper. But none of the patents show a structure composed wholly of paper so prepared that in wrapping it around the mandrel numerous air spaces are formed by the superimposition of its convolutions, the air in such spaces not being free to circulate, and the successive layers so fastened together by mucilage or otherwise that the covering may be cut off the mandrel and slipped over the pipe without destroying its characteristic cellular structure. In Toope (218,340), Martin (245,083), and Johns (262,429), the effective covering material is loose fiber, such as felt, hair, or loose asbestos, held in place so as to form one or more successive layers by asbestos or other paper. In Ballou (173,436) cement is used, and held in place by paper wrappings. In Peters (reissue 6,516) the

material consists of slabs or sheets of asbestos, with hemp or animal or vegetable fiber, which have been exposed to such pressure (hydraulic or other) as to eliminate, so far as may be, any air spaces. In Zimmerman (250,322) the refrigerator is practically two concentric cylinders built up of wood, with air spaces between. The various patents for corrugated paper and carpet lining need not be discussed. They are too remote. Corrugated paper was concededly old. There remains only the Reed patent (171,425), in which the covering is composed wholly of paper, without relying on additional loose fiber. Examination of that patent, however, shows that the system it describes is the direct antithesis of the one in suit. "My invention," says Reed, "consists in a nonconducting covering, composed of layers or wrappings of paper, preferably roofing paper, saturated with adhesive material, and compressed while being formed into tubular sections. * * * In addition to the traction which will compact the covering, I make use of pressure, by means of weighted friction bar or plate, or in other suitable manner, so as to insure a dense, firm structure throughout." Here there is no suggestion of the formation of artificial air spaces by securing the successively superimposed sheets of paper to each other "only in lines" or "at intervals," but a process of manufacture is enjoined which must necessarily prevent their formation. An alternative method of manufacture is suggested by Reed, viz. using wire mesh in place of mucilage, but evidently not with the intention of forming air spaces; for he expressly says that such mode can be applied in situ only, and that the covering cylinder must not be cut longitudinally. An attempt is made to show that, in practice, coverings purporting to be made under the Reed patent anticipated complainant's device. The evidence is unsatisfactory. Assuming that the successive layers split apart when the section of covering was "sprung on" the pipe, they undoubtedly came together again when the covering was once in place. Certainly no one intentionally availed of complainant's device in practicing the Pierce patent. Careless workmen may occasionally have so applied Reed's covering as to destroy its distinguishing characteristic, and leave in it occasional air spaces; but those who worked under the Reed patent sought to prevent this very thing, and succeeded in doing so by slitting each section along the back so as to form a hinge. This does not seem to be the sort of prior use which will defeat a patent.

As to infringement: Defendants add a canvas cover, which of course does not avoid the patent. In all other respects it seems apparent from an inspection of the stipulated sample that the distinctive feature of complainant's patent has been availed of. Paste may be swept over the entire surface of the corrugated sheet in the process of manufacture, but it apparently acts as a binder only on the summits of the corrugations. Decree in usual form, with additional clause, as in the Accumulator Case, declaring No. 10,375 inoperative, and prohibiting its assignment or sale.