WRITING MACH. CO. v. ELLIOTT & HATCH BOOK-TYPEWRITER CO.

(Circuit Court, S. D. New York. July 12, 1900.)

PATENTS—INFRINGEMENT—BOOK TYPEWRITER.

The Crary patent, No. 477,517, for improvements in typewriting machines designed for printing in books of record, claim 1, contains a single novel feature, which consists of a mechanical connection between the table on which the book rests and the leaf-supporting platen by which the latter can be adjusted and rigidly held in position at any desired height to suit the thickness of the book. As to such feature, it was not anticipated and is valid, and, in view of the prior art, is entitled to a construction broad enough to cover any such means of adjustment and support located in the machine itself. As so construed, the claim *held* not infringed.

In Equity. The cause comes here upon final hearing on pleadings and proofs. The suit is for infringement of United States patent No. 477,517, June 21, 1892 (application filed November 13, 1891), to Joseph M. Crary for improvements in typewriting machines.

D. Walter Brown, for plaintiff.
Ewing, Whitman & Ewing, for defendant.

LACOMBE, Circuit Judge. The invention relates to an apparatus which is intended particularly for printing in large books of record, in which case the type mechanism is made to move longitudinally and transversely, upon a suitable bed frame, over the page of the book. The specification is a long one, with 14 figures and 13 claims, but, since the first claim only is relied on, a brief description of the element therein which differentiates the machine from the prior art will be sufficient.

To a stationary table is adjustably connected a rigid, flat leaf-supporting platen. This platen is connected to the table, as shown in the specifications and drawings, by four slotted links, which at their upper ends are pivoted to ears of the platen. Said links are slotted, and slide and oscillate on rods supported below the table top. Clamp nuts enable the operator to fix the platen at any height above the table, thus adjusting it in a rigid position, at whatever elevation may best suit the thickness of the book, which lies upon the table. The first claim reads as follows:

"(1) In a typewriter, the combination, with a table and its supports, of a flat platen, adjustable to and from the table top, type mechanism, and means supported wholly upon the platen for removing the type mechanism transversely and longitudinally over the platen, as and for the purpose set forth."

Without going into an elaborate review of the progress of the art, it will be sufficient to say that in a prior patent to Crary, No. 477,353, June 21, 1892 (application filed January 3, 1891), every element of

this claim is shown, except the mechanism which makes the platen adjustable to and from the table top. The platen in No. 477,353 was rigidly fixed in permanent position, and the book was moved up or down to conform the relative positions of book and platen to varying thicknesses of the books operated upon. Although No. 477,353 was issued on the same day as the patent in suit, it is none the less "earlier," and, as against No. 477,517, is to be taken as a part of the prior art. Underwood v. Gerber, 149 U. S. 224, 13 Sup. Ct. 854, 37 L. Ed. 710. It is believed that complainant's expert concedes this, for he admits that there was "an earlier class of invention, having a fixed platen, which would require an adjustable book support," and that, if the connections between the platen and the table are not adjustable, there would be no infringement of the first claim.

It seems entirely plain that between the combination of the first claim and the prior patent the only difference resides in the arrangement of the connections between table and platen so as to make the latter adjustable. It may be that this single step was a most meritorious improvement, and, by saving the necessity of continually moving a cumbersome volume, greatly increased the practical value of the typewriter; but, being the only element of difference, it materially reduces the field of discussion.

The defendants dispute the validity of this claim on the ground that the adjustability of the platen is anticipated, or, if not, is devoid of patentable novelty. The references do not show any anticipation. In Remley's patent, No. 385,008, June 26, 1888, "the plate, D," is adjustable to and from the table top by means of a screw, but this plate underlies, not only all the pages on one side of the open book, but the cover as well. It is a support for the book itself, not a leaf-supporting platen at all. The early work of Mr. Elliott, of defendant corporation, is also relied upon. Waiving any question as to the sufficiency of the proof to establish a sufficiently early date for what is called in the record the "Elliott Letter A Machine," there is no proof that he used any other than an independent platen, having no connection with the machine, and inserted by the operator under the page to be written on. It would be hardly a fair construction of the word "adjustable," when used in connection with such a description as that of the patent, to hold that it covered a disconnected platen, solely because the operator might pick it up and thrust it into the book wherever he pleased. The word implies that the adjustability is secured by the co-operation of the parts of the combination. Anticipation is not shown, and patentable novelty seems plain.

Defendant further contends that the claim must be restricted to the precise form of connection shown in the patent, viz. the four slotted links pivoted to ears of the platen and clamped to the rods. In view of the fact, which the evidence seems to establish, that prior to Crary's there is found no machine containing the other elements of the first claim, combined with a platen adjusted through their co-operation, and that the first patent covering such combination is the one sued on, the claim cannot be thus restricted. It will cover any means, located in the machine itself, whereby the table top and flat platen are so combined that the latter may be moved to any desired distance

from the table top, and there retained in place rigid, and in a proper plane to receive the impact of the type. A platen is not fairly to be called "adjustable" merely because its connection with the rest of the machine is so loose that it can be lifted by hand to a desired height, if there is no means of securing it at such height. The inventor's idea of the meaning of the words used in his claim may be learned from the following excerpts from the specification, being the only passages which refer to the adjustability of the platen:

"C is the platen, consisting of a flat plate of rectangular form, as shown in Fig. 13, and C' are four ears upon the same, to which links, U, are joined by clamping screws, U'. V are bearings attached to the table, and V' rods extended through the same, and through slots, U2, in the links. The platen, by means of the links, is adjustable to the thickness of the book upon the table, and is then fixed rigidly by the clamp nuts, V2. When a portable table is not desired, any stationary table may be used to support the book-printing device, and the links may in such case be used independently of the tie rods by setting them at any suitable angle with the platen, to sustain the latter at a suitable height above the table to suit the thickness of the book, the links when adjusted being clamped rigidly to the ears, C', by the screws, U'. The links with such construction merely rest by their ends upon the table top which supports the book, but serve as adjustable legs to set the platen above the table top at a suitable distance to place the book beneath the platen. * * * To operate the devices already described with the portable table, the clamp nuts, V2, are loosened, and the platen is raised sufficiently to introduce a portion of the book beneath the same upon the table top. The links, U, are then adjusted and clamped to hold the platen close to the top of the book. The leaf upon which the printing is required is then laid flat upon the platen, and the clamping frame applied," etc.

It seems quite clear that the first claim was intended to cover a platen whose type-stroke receiving surface was to be maintained in its proper plane by the other parts of the structure with which it was combined, and not by reason of the fact that such platen rested upon, and was supported by, the book itself. The defendant's structure does not infringe this claim as thus construed. The back rod to which the rear end of the platen is attached secured the platen against lateral movement, but it is manifest, upon mere inspection of the machine, that what keeps the type-stroke receiving surface of the platen in the proper plane is the support it receives from the book itself. Its adjustment is not secured by the other parts with which it is combined. The bill is dismissed, with costs.