FOUNTAIN ELECTRICAL FLOOR BOX CORPORATION v. TRUSTEES
MASONIC HALL AND ASYLUM FUND.

(District Court, S. D. New York. December· 26, 1913.)

PATENTS (§ 328*) — VALIDITY AND INFRINGMENT — FLOOR BOX FOR ELECTRIC
CONDUCTORS.

The questions of the validity and infringment of the Krantz patent, No.
738,688, for a floor box for electric conductors as against the defenses of
lack of invention, abandonment, and noninfringement, *held* properly sub-
mitted to the jury, and a verdict for plaintiff *held* sustained by the evi-
dence.

At Law. Action by the Fountain Electrical Floor Box Corporation
against Trustees Masonic· Hall and Asylum Fund. On motion by de-
fendant to set aside verdict and for a new trial. Denied.

F. Warren Wright, of New York City (Fred Francis· Weiss, of New·
York City, of counsel), for plaintiff.

Paul M. Goodrich, of New York City (John H. Roney, of Chicago,
Ill., of counsel), for defendant.

RAY, District Judge. This is an action at law brought by the plain-
tiff, owner of the patent in suit, to recover damages for the infringe-
ment by defendant, a user, of letters patent No. 738,688, issued to
Hubert Krantz, September 8, 1903. Claim 3 of the patent in suit is
the only one in issue, and same reads as follows:

"3. A floor box for electric conductors, comprising an outlet box part adapted
to be secured in place below the flooring, a sleeve secured thereto, lugs pro-
jecting inwardly from the wall of said sleeve, contacts carried by but insulated
from said lugs, in combination with a plug carrying contacts adapted to con-
nect with said first contacts, and a cover, substantially as described."

This floor box for electric conductors has: (1) The box part which
may be secured to a floor or beams or any suitable support beneath the
main floor; (2) the sleeve part "secured thereto," that is, to the box
part; (3) the lugs, which project· inwardly from the wall of the sleeve
and which are or may be iron projections integral with the sleeve part
or suitably attached thereto; (4) electrical contacts carried by but in-
sulated by suitable insulating material from the lugs; (5) a plug car-
rying electrical contacts, which contacts are so placed on the plug as
to connect with the contacts carried by the plug when the plug is in-
serted; and (6) and lastly, a cover for the whole. The floor box is
placed in position beneath the main floor as stated, and the sleeve
which, by means of the lugs thereof, carries one set of contacts, is·
secured thereto on the upper side or above the floor box proper, and
then the cover is above that, and when all are in position is supposed
to be even with the main floor. It is advisable to have this sleeve part
adjustable; that is, so arranged and connected or secured to the box
part that it can be raised or lowered more or less with reference to
the box part and still be efficiently connected therewith. The drawings
and specifications of the patent in suit show this sleeve part connected
to the box part by means of a screw thread. This is one mode of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

securing the one part to the other, but the claim is not limited to this means or mode of securing the sleeve to the box. It was only neces-sary for the patentee to show one mode of attaching the one to the other, and the patentee was not limited by showing this mode of attach-ment to that mode, as he did not so limit himself in the claim. "Se-cured thereto" would permit any mode of securing the one to the other effectively.

The defendant has a structure with box part and sleeve and a cover and lugs projecting inwardly from the wall of the sleeve, and these sustain or carry the contacts, which are insulated therefrom, by means of a metal swing like structure on which is placed the contacts (in-sulated therefrom), but the swing insulation and contacts are supported and carried by the lugs. In defendant's structure the sleeve is not secured to the box part by any screw thread, but by means of a deep groove in the walls of the box into which the lower part of the walls of the sleeve slip, and then this groove is filled with cement, and when it hardens the sleeve is firmly secured to the box part. Or the groove may be first filled with cement, and then the lower edge of the wall of the sleeve may be pressed down into the cement, and when the cement hardens the one part is firmly secured to the other. This structure of the defendant has an advantage over the other, in that the groove is so large that the sleeve may be tipped when pushed down into the ce-ment and so conform to a slope in the floor. It has the disadvantage that the sleeve part cannot be raised and lowered at will without break-ing or digging out the cement, which can be done by means of the screw thread in the patent in suit. But this patent in suit was not granted on the screw thread or because of any advantage growing out of its presence. The patent in suit issued for the reason, mainly, that the sleeve part by means of its lugs carries the contacts and the in-sulating material. It was left to the jury to determine whether the one mode of attaching the sleeve to the box part was the equivalent of the other.

It is true that in the prior art we have similar devices and for a sim-ilar purpose and patent to Goehst & Wilkes, 681,416, of August 27, 1901, is pointed out as so limiting this claim of the patent in suit as to demonstrate that patentable invention is not disclosed. Goehst & Wil-kes has a box part and a sleeve part, and these are attached by a screw thread; but the sleeve has no lugs, nor does the box part, and the contact carrying device is secured in the box part, and hence is not movable perpendicularly with the sleeve part. It is error to say that the only difference between Goehst & Wilkes and the patent in suit is that the sleeve of the patent in suit has lugs which carry the contacts. It makes a very material difference where the sleeve carries the con-tacts.

The case was submitted to the jury on all the issues presented by the pleadings and evidence, and the jury found for the plaintiff. There was no exception to the charge as made, but the defendant requested the court to charge:

"I. That under the pleadings and evidence in the case, the court is requested to direct that the verdict of the jury must be in favor of the defendant.

"II. The court is requested to instruct the jury to find a verdict for the de-

fendant upon the ground that the plaintiff has not proven infringement, and upon the further ground that the plaintiff had not shown any new invention covered by the claims of the patent in suit.

"III. The court is requested to instruct the jury that, in view of the proceedings in the Patent Office as exemplified in the file wrapper and contents in evidence, the claim of the patent in suit is limited to the specific construction shown and described in the said patent, and that, when so construed, the defendant's structure does not infringe the same.

"IV. The court is requested to instruct the jury to find a verdict for the defendant on the ground that the third claim is limited to a structure comprising, inter alia, a box part and a sleeve, the sleeve being threaded to engage a corresponding thread upon the box, and that, when so limited, the structure of the defendant does not infringe the same.

"V. The court is requested to charge the jury that it is incumbent upon the plaintiff to apportion the damages on the ground that the outlet box proper omitting contacts is the subject-matter of an earlier patent than the patent in suit.

"VI. On the pleadings and evidence in the case, the court is requested to instruct the jury to find a verdict for the defendant on the ground that the invention set forth in claim 3 of the patent in suit has been abandoned to the public.

"VII. The court is requested to charge the jury that the plaintiff, in the event of the jury finding for the plaintiff, is only entitled to nominal damages on the ground that defendant's construction is manufactured and licensed in so far as the adjustable sleeve and box portion is concerned under an earlier patent than the patent in suit, to wit, No. 699,381, dated May 6, 1902; the plaintiff not having apportioned the damages between the structure of the said earlier patent and the patent in suit."

Requests 1, 2, 3, 4, and 6 are in effect requests to the court to direct a verdict for the defendant on the ground of want of invention, no infringement, and abandonment. The court held these were questions of fact for the jury. The prior art and numerous models and structures were before the jury, and the whole matter was discussed by witnesses, counsel, and the court. I discover no ground for disturbing the verdict.

It is true that the claims of a patent are to be reasonably construed, and that they are to be construed in the light of the specifications; but this does not mean that when one form of construction is set forth in the specifications, and there are other forms equally good, and the language of the claim is broad and comprehensive enough to include either of these forms of construction, that the claim is limited to the form shown. Hence when the patentee in the specifications says, "I make the floor box in two parts, namely, the sleeve part and outlet-box part, threaded on to each other, and I am enabled to first approximately locate the outlet box and then accurately fit the sleeve to the level of the floor by turning it more or less on its threads," he is simply stating how the sleeve part in that form of construction is or may be adjusted to the level of the floor. When the sleeve part is attached or secured to the box part by allowing the one to engage the groove of the other filled with cement, we would say, "I am enabled to first approximately locate the outlet box and then accurately fit the sleeve to the level of the floor by turning or lifting it or pushing it downwardly in the groove of the box part filled with soft cement, which will then be allowed to harden." Here the jury found that the one form of securing the sleeve to the box was the equivalent of the screw thread

shown and an allowable equivalent in view of the prior art and the file wrapper and contents and the language of the claim, all of which was read and rehearsed to the jury. Can the court substitute its will and finding of fact for the finding of the jury, when that finding depends on the language and meaning and construction of a number of patents and the varying evidence of experts?

## Abandonment.

This question was also submitted to the jury with the other questions in the case and found in favor of the plaintiff.

The defendant claims that Krantz in a prior application for a patent, which was granted (United States letters patent No. 726,945, dated May 5, 1903), fully described the invention of the patent in suit, but did not claim it, and that, not having claimed it, he must be deemed to have abandoned his said invention to the public. He cites Underwood v. Gerber, 149 U. S. 224, 13 Sup. Ct. 854, 37 L. Ed. 710. See, also, Miller v. Brass Co., 104 U. S. 350, 352, 26 L. Ed. 783, and Mahn v. Harwood, 112 U. S. 354, 360, 361, 5 Sup. Ct. 174, 6 Sup. Ct. 451, 28 L. Ed. 665.

In Underwood v. Gerber, supra, the claim of the patent No. 348,073 sued on was for "a sheet of material or fabric coated with a composition composed of a precipitate of dye-matter obtained as described, in combination with oil wax, or oleaginous matter." The patent was issued August 24, 1886, on application filed March 22, 1886. On application filed the same day, March 22, 1886, and granted August 24, 1886, a patent had been granted to the same parties for the identical composition. This patent was not sued on or even alleged. The court said that it must be treated as outstanding, but did not hold it was invalid. It held that there was no patentable novelty in spreading a known composition on paper, and hence the patent sued on was invalid, and in view of the pleadings, so far as the patent sued on was concerned, the composition must be regarded as belonging to the public. See 149 U. S. page 228, 13 Sup. Ct. 854, 37 L. Ed. 710.

If a person makes two inventions, and he applies for a patent for one, and in that application describes the other, but does not claim it, but files another application for that other and gets a patent therefor, is it the law that his second patent for such other invention is invalid because he described but did not claim it in the first application? Cannot he divide his application even if he has described both inventions without claiming both in the application first filed? But this question of abandonment was left to the jury, and no exception was taken, and I do not see that the same invention was described in the first Krantz patent and not claimed that was described and claimed in the claim of the patent in issue here. There was evidence of a substantial difference, and the jury found in favor of the plaintiff on that issue. I think the question was properly left to the jury, and that its decision should not be disturbed.

In regard to the first Krantz patent (Exhibit G), Krantz testified that it was for substantially the same construction as the Stahley box, and that his patent in suit differed from it the same as the Stahley box

did, and Mr. Fullman substantially admitted that the contacts and plugs of the Krantz patent in suit were not present in the Stahley patent.

I think the evidence showed an established license fee and that the damages were proper.

There will be an order denying the motion for an order setting aside the verdict and for a new trial.