### ELY NORRIS SAFE CO. v. MOSLER SAFE CO.
#### No. 81.

Circuit Court of Appeals, Second Circuit.
Jan. 9, 1933.

Warfield & Brown, of New York City (F. P. Warfield and Donald L. Brown, both of New York City, and George S. Schmidt, of York, Pa., of counsel), for plaintiff-appellant.

Henry Van Arsdale, of New York City (Drury W. Cooper, Alexander Pfeiffer, and Allan C. Bakewell, all of New York City, of counsel), for defendant-appellant.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The defendant appeals from a decree which holds United States patents No. 827,-351, and No. 909,568, relating to safes, valid and infringed, and the plaintiff appeals from that part of the decree which dismissed the complaint for unfair competition resulting in loss of sales of safes. The issues of patent infringement are the usual ones of validity and infringement with the plea of laches for failure to prosecute diligently. The unfair competition allegations of the complaint are unusual for they are based upon the claim of misrepresentation of defendant's product in competition; the plaintiff claiming the sole right to sell a type of safe claimed to be protected by its patents. Patent No. 827,351 expired July 31, 1923, and patent No. 909,-568 on January 12, 1926.

The bill of complaint was filed March 20, 1919. The patents relate to a construction for safe doors whereby greater difficulty and danger is presented to one attempting to open or break through the door by means of an explosive such as nitroglycerine. The doors are provided with hollow or empty spaces or chambers, called explosion chambers. They divide the door into inner and outer portions, and the outer portion is thinner than the inner portion. The specifications of the first patent state that "my invention obviously includes the use of any desired number of door portions separated in any desired manner and graded as may be deemed best to resist operations likely to be conducted against it." The function is stated as follows:

"When an explosive is introduced between the door and the safe body, it will flow or fall into these recesses or chambers, or when exploded will tend naturally to act in them and will merely blow off or rupture the outer and thinner face portion of the door and will thereby expend its force without injuring the heavier inner portion and the locking mechanism mounted thereon. In fact, the action of an explosive in any one or all of these chambers or recesses will tend more firmly to seat the more substantial inner portion of the door the better to resist further operations, as well as for the better protection of the locking mechanism."

In the first patent, the explosion chamber is "preferably partially or wholly open adjacent to the circumference of said door," but if closed, it should be by a wall of such nature that any explosive introduced between the door and the safe body will act first in the chamber and against the side walls thereof, rather than between the safe body and the periphery of the door. The second patent was applied for nearly two years after the first issued. It is for a nonpreferential covering strip about the explosion chamber. The novelty is said to be a "readily destructible wall" closing the periphery of the chamber in the door.

The first patent states the safe body may be of any shape or material, and consequently the door may be of any shape, round or oblong. That patent also states that the recesses in the door have another function of

"heat-resisting or insulating means to protect the contents of the safe." Claims 1, 2, and 6 of the first patent show, as their essential feature, a chamber open at its periphery, and the chamber is described functionally as an explosion chamber. The thin metallic strip or readily destructible wall to close the periphery chamber, referred to in the second patent (claims 1 to 5) is disclosed but not referred to or claimed in the first patent. The court below pointed out, with good reason, that explosion chamber doors, if advantageous, as far as burglary-proof characteristics are concerned, became less important when the acetylene torch came into use.

Tests of the usefulness of these explosion chambers were made in 1909 on a manganese steel safe. For a period of two hours charges were inserted around the door and detonated, and it resulted in the nitroglycerine blowing off a section of the outer portion, and the inner portion of the door remained intact, being forced violently into the tapering door jamb. Another test was made in 1911 with somewhat the same results. In each test it took a heavy charge to blow off the outer door.

The first patent is for a preferred construction. The patent says:

"These chambers or recesses, while preferably partially or wholly open adjacent to the circumference of said door, (see Fig. 5,) should, if closed, at least be by a wall of such nature that any explosive introduced between the door and the safe-body will act naturally or first in the chambers or recesses and against the side walls thereof rather than between the safe-body and the periphery of the door."

The second is for a destructible wall closing the periphery of the open space. The first was issued July 31, 1906, and on March 28, 1908, the patentee filed the application for a second patent, and the only difference is in the respect stated now to be "the preferred embodiment of my invention. * * *" The second patent is for the same invention, and is an alternative and inferior form. It is the one with a destructible wall closing the periphery of the open space. The first patent disclosed this inferior or alternative construction, but did not claim it. That which is described and not claimed in a patent is abandoned to the public unless the inventor before the grant of the first patent has on file an application asserting the same invention. Underwood v. Gerber, 149 U. S. 224, 231, 13 S. Ct. 854, 37 L. Ed. 710; Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783. The plaintiff's inventor cannot now assert a monopoly in that which he abandoned to the public. Therefore the second patent is invalid.

There are four types of safes asserted to have infringed the patents. They are referred to by the names of the banks which purchased them. The first considered was the Cowles safe, which was held below to infringe claims 1, 2, and 6 of the first patent. The claims are:

"1. A safe, provided with a door-jamb, and a door arranged to be moved into and out of said jamb and having an explosion chamber or chambers extending inwardly from and open at its periphery, the substance of the door on opposite sides of the chamber or chambers being rigidly united and the outer portion adapted to be severed from the inner portion by the force of an explosion within the chamber or chambers, without removing the inner portion, the door-jambs serving as the covering medium for the peripheral opening of the chamber or chambers.

"2. A safe, provided with a single integral door, having one or more explosion-chambers extending inwardly from and open at its periphery, and rib-like walls connecting the material of the door on opposite sides of the chambers."

"6. A safe-door, made as an integer and provided with a recess extending inwardly from its periphery and open at the periphery and constituting an explosion-chamber, the substance of the door on opposite sides of the chamber being rigidly united and the outer portion thinner than the inner portion and adapted to be ruptured or blown out under the force of an explosion within the explosion-chamber."

The inventor provides that the inner portion of the door of the safe be thicker than the outer so that the latter is blown off by the explosion. The defendant's safe has a heavier outer door face with a thinner inner door. The structure would reasonably cause one to conclude that an explosion would not sever the heavy outer face. Nor was it reasonably shown that the explosion would not destroy the inner portion of the door. The plaintiff has not proved that this door would act in accordance with the patent's claims. The defendant's safe did not have a single integral door, as in claim 2, for the heavier outer face is a separate casting and is secured to the inner portion by heavy lugs, and it has not riblike walls as specified in the claim. There was no infringement of these claims.

Keystone Bridge Co. v. Phoenix Iron Co., 95 U. S. 274, 279, 24 L. Ed. 344.

The second claimed infringement is by the Halifax safe. This safe was sold by the plaintiff in 1908 to the First Bank of Fallis at Fallis, Okl. Shortly thereafter it was burglarized. The insurance company refused to pay the loss, and a suit followed. A witness, an employee of the Mosler Safe Company, testified that, after the burglary, the safe was shipped to the Mosler Safe & Lock Company. It could not be unlocked when received and a hole was drilled in the back of the safe and a rod placed through it to trip the locking mechanism of the inner door. There is no evidence of a so-called explosion chamber. This safe was then resold to the Bank of Halifax, of Halifax, Pa., as a secondhand safe. The hole was drilled in 1911. In March, 1930, one of the employees of the York Safe & Lock Company saw this safe and recognized it as a safe body of plaintiff's construction bearing the same number as a safe which was sold to the First Bank of Fallis. It then contained a removable raid chest, and on the door of the inner chest there appeared the name of Mosler. One of the plaintiff's witnesses saw it in 1930 and stated that a hole had been drilled in the door and that a metal plug had been hammered into the hole. From this it is argued that it was reconstructed and sold by the defendant. It is said to be an infringement, but it does not appear when the hole was drilled or by whose authority or request it was drilled and whether prior to or after it was sold to the Bank of Halifax. It is quite apparent that when the locking device went wrong and it became necessary to drill the hole in the door to repair it, it was later plugged, but the defendant cannot be charged with this as constituting an act of infringement. The repair may be assumed to have been made on instructions from the bank. It was not the construction of a safe. There is testimony that it is the practice of safe manufacturers to place their name upon secondhand safes when they sell them. This resale of a secondhand safe in the manner described and the repair necessarily made to adjust the locking device, first drilling a hole, cannot be regarded as an act of infringement. We agree with the court below in holding that it was not.

The court held that the Kelso safe did not infringe the second patent as claimed; also that the Austell safe infringed the first five claims of the second patent. But, since we hold that the second patent is invalid, the decree of infringement thereof must be reversed as to the Austell safe. The charge of infringement as to the Kelso safe will be dismissed.

The plaintiff's appeal involves a consideration of a claim of unfair competition. The Supreme Court considered plaintiff's allegations in its bill of complaint in Mosler Safe Co. v. Ely-Norris Safe Co., 273 U. S. 132, 47 S. Ct. 314, 71 L. Ed. 578, and pointed out that to sustain the suit it was necessary to prove that the defendant deceived customers, and that, but for such deception, they would have purchased safes from the plaintiff and from no one else. The court said:

"If on the other hand the representation was false as it is alleged sometimes to have been, there is nothing to show that customers had they known the facts would have gone to the plaintiff rather than to other competitors in the market, or to lay a foundation for the claim for a loss of sales."

There is no claim of palming off defendant's safes as those of the plaintiff. In a suit by a private individual for the protection of a property right vested in him, it is of great importance that there be a deception of the public with respect to the origin of the goods sold, as where goods are palmed off. The essence of the wrong in unfair competition consists in the sale of goods of one manufacturer as those of another, and, if the defendant so conducts its business as not to palm off its goods as those of the complainant, the action fails. Howe Scale Co. v. Wyckoff, 198 U. S. 118, 140, 25 S. Ct. 609, 49 L. Ed. 972.

But the plaintiff advances the theory that it has a monopoly in explosion chamber safes and therefore has the right to prevent others from using the name on such make of safes. We will examine the sales which are referred to and inquire whether the plaintiff did in fact lose customers by reason of the defendant's sales talk or agreements, and, if so, was it due to means which the law forbids. Ely-Norris Safe Co. v. Mosler Safe Co., 7 F.(2d) 603 (C. C. A. 2).

In the case of the sale of the safe to the Second National Bank of New Hampton, Iowa, the correspondence (Exhibits 6 and 8) establishes that the safe was not sold on the basis of being an explosion chamber safe, and the sale took place in 1922 after the plaintiff had ceased making safes. There could be no loss by the plaintiff because of this sale.

The sale to the Plymouth State Bank of Plymouth, Ill., was claimed to be a sale of a

safe of the construction which would be an infringement of the plaintiff's second patent in suit. The testimony regarding this sale shows that a buyer wanted a Mosler safe, and it was bought as such. The bank wrote a letter to the defendant asking that its representative call. There was no representation respecting an explosion chamber, nor indeed does it appear that the drawings of the safe represented such a chamber.

The safe sold to the Versailles State Bank of Versailles, Ill., was also a safe claimed to be of a construction such as to make it an infringement of the second patent in suit. The cashier testified that at the time of this sale he was looking for a burglar-proof safe, but not of a particular type. He saw four or five safes. He had seen previously a Mosler screw-door safe, and believed he was securing from the defendant a similar type of Mosler safe when he made the purchase. He said the Mosler safe was represented to him as being an explosion chamber safe or he would not have purchased it. This sale was made in 1921, after plaintiff had ceased making or selling safes. The sale of the safe to the Farmers' State Bank of Milton, Ill., was under circumstances which did not indicate that the purchaser would have purchased a safe from the plaintiff.

In these and the other sales referred to, it is clear that the defendant did not misrepresent its safes or indeed that the defendant was in competition with the plaintiff in the sale of its safes, and there is no basis for plaintiff's claiming a loss of sales because the defendant made its sales. We fail to find actual misrepresentations regarding the defendant's safes on the occasion of any of these sales. It does not appear that the defendant cut the prices or in any way interfered with legitimate sale of the plaintiff's safes. The court properly dismissed the suit for unfair competition.

For the reasons stated, the decree will be reversed, with directions to dismiss the bill with costs.