## CLEWELL v. COE, Commissioner of Patents.

### No. 56262.

District Court of the United States for the District of Columbia.

April 6, 1939.

Eugene E. Stevens and A. R. Townshend, Jr., both of Washington, D. C., for plaintiffs.

R. F. Whitehead, of Washington, D. C., for defendant Commissioner of Patents.

GORDON, Associate Justice.

This is a bill in equity under Sec. 4915, R.S., Sec. 63, T. 35, U.S.C., 35 U.S.C.A. § 63, to authorize the Commissioner of Patents to issue a patent on certain claims of plaintiff's application, covering a film having certain indicia printed thereon.

Claim 15 is illustrative of the other claims, and reads as follows: "An unexposed photographic film comprising a support composed principally of cellulose ester, a light sensitive halide emulsion coated on one side of said support, the other side of said support having non-smearing, non-fogging indelible ink printed indicia in the margin thereof."

Plaintiffs filed their joint application in the Patent Office on April 12, 1928. The Primary Examiner rejected the claims here in issue and his decision was affirmed by the Board of Appeals in the Patent Office.

In his answer the Commissioner (as did the tribunals of the Patent Office) takes the position that plaintiffs' claims are unpatentable over the prior art consisting of patents to—Fiedler—1,704,124, March 5, 1929 (application filed Sept. 17, 1924); Clewell—1,806,965, May 26, 1931 (application filed April 12, 1928); Lummerzheim—1,828,974, Oct. 27, 1931 (application filed Oct. 29, 1927).

The Commissioner further contends that the allowance of the claims here in issue would constitute double patenting in view of patent No. 1,806,965 to Clewell.

The evidence adduced by plaintiffs shows that the plaintiff McCormick is employed by the Development Department of E. I. DuPont de Nemours & Company, Wilmington, Delaware, and has been since 1916; and it was his duty to follow and keep in touch with developments in motion picture film development; that about 1921 or 1922 he learned that negative film was being put on the market (by the Eastman Kodak Company) which had indicia or numbers printed photographically along the edge of the film. It appears that the DuPont Company at that time proposed to go into the film manufacturing field, and had to develop a method of marking film if it was to compete with the film then going on the market. DuPont Company found that the process employed by the Eastman Kodak Company to mark their film was protected by a patent and was therefore barred to DuPont. In considering the problem, McCormick conceived the idea of printing numbers on unexposed film with an indelible ink, so that the numbers would be visible at all times, whether on the raw stock or after development. The numbers photographed on the film then being made by Eastman could be seen only after development. McCormick was not an ink chemist, and had no conception of any specific formulae for any ink. On February 13, 1923 he wrote to Dr. Renwick, director of the DuPont research laboratory at Parlin, N. J., suggesting that other departments of the DuPont Company could help in developing suitable ink. Renwick took the matter up with their research laboratory at Arlington, N. J. where DuPont Company's nitrocellulose plastic material "Pyralin" was manufactured and where the plaintiff Clewell, a chemical engineer, was employed. On August 24, 1923 Clewell wrote to Renwick, giving a formula for an ink to be used on film, for which ink he later obtained a patent (R. 70–71).

McCormick testified that in 1923 a strip of unexposed motion picture film was made, having on the rear, uncoated side ink-imprinted marking which were non-fogging, non-smearing and permanently indelible (R. 62). Specimens of the film were later destroyed, because of the fire hazard. Holzwarth testified that in August or September, 1923 he made up ink from the formula furnished by Clewell and applied the same by means of a rubber stamp to the back of raw motion picture film, and then developed and washed and dried the film; the ink withstood all the tests. Clewell's ink was satisfactory for all photographic purposes (R. 95–96). Holzwarth also applied other inks to the raw film during August, 1923 (R. 105, 108). The testimony of the witness Sease corroborated that of Holzwarth.

■ The testimony on behalf of plaintiffs establishes to my satisfaction that the plaintiffs' joint conception was actually reduced to practice at the Redpath laboratory, Parlin, New Jersey, in August, 1923, prior to the filing dates of the abovementioned patents. Those patents are therefore not valid references against the instant application.

■ Nor do I think that the defense of "double patenting" can be sustained. In the first place, the applicants in the instant case and the patentee Clewell are not the same persons; Clewell and McCormick, as joint applicants, are wholly separate and distinct from Clewell as patentee. Moreover, I do not think that the instant application and the patent to Clewell cover the same subject matter, or essential parts of one invention.

■ Clewell's patent states that it relates "particularly to ink for marking and printing on cellulose ester bodies, as cellulose ester plastics and film having cellulose nitrate or cellulose acetate as a base." The patent continues: *"Although not restricted thereto,* it finds particularly valuable use in the application of indicia, e. g. footage numbers, to motion picture

film, especially in those cases where the indicia are to be applied by an automatic numbering machine" (italics supplied).

It thus appears that Clewell's ink is not restricted to use on undeveloped motion picture film; it is not an essential part of the film covered by the claims here in issue. The ink described in the claims here in issue is stated to be a "non-smearing, non-fogging indelible ink" and "an ink containing a dyestuff and a cellulose ester solvent having a boiling point substantially between 140° and 225°." The testimony of Holzwarth showed that, at the same time the ink submitted by Clewell was tested, other inks were also used and found to be satisfactory and that his laboratory notebook contained the formulae of those other inks.

The Commissioner relies mainly upon the case of Underwood v. Gerber, 149 U.S. 224, 13 S.Ct. 854, 855, 37 L.Ed. 710. In that case the two Underwoods, on March 22, 1886, filed two applications in the Patent Office, which ripened on August 24, 1886 into patents Nos. 348,072 and 348,-073. In No. 348,072 the Underwoods claimed "the coloring composition herein described for the manufacture of a substitute for carbon paper." In No. 348,073 the Underwoods described, verbatim, the coloring composition of No. 348,072 and then claimed "a sheet of material or fabric coated with a composition composed of a precipitate of dye-matter, obtained as described." In other words, they obtained two patents, one for a specific coloring composition, which appears to have had no other use, and the other for a sheet of material with that specific coloring matter applied to it. (As noted above, Clewell's ink is suitable for marking or printing on any cellulose ester bodies). The Underwoods filed a suit against Gerber et al. for infringement of Patent No. 348,073, covering a sheet of material coated with their coloring composition. They made no mention of Patent No. 348,072. The defendants in their answer set up the composition patent, together with other art, to show that it was old to coat paper with

different compositions for the same general purpose. The court held that in view of the state of the art showing it to be old to coat paper with other compositions to make transfer paper, there was no novelty in coating paper with the composition disclosed in the earlier Underwood patent. Thus the court discussed with approval the opinion of the lower court, in which it was stated that: "at the time when No. 348,073 was issued, the composition of matter which enters into the combination with paper was known, and the right to exclude all persons from combining paper with that composition was conferred upon the holders of No. 348,073, but in view of the state of the art such a grant was void; that the combination which No. 348,073 sought to cover was not patentable; that this suit, being based upon that patent alone, must therefore fail; and that to the holder of No. 348,072, whoever he might be, belonged the right to exclude all others from making the new composition of matter, the only invention which (if the other issues in the case were decided against the defendants) was sufficiently novel to warrant the granting of letters patent."

In this connection it is interesting to note that in the patent to Lummerzheim et al., No. 1,983,910, issued December 11, 1934, the following broad claim was allowed: "Photographic raw film comprising a support and on the front side of said support a photographic emulsion the rear side of said support bearing photographically printable inscriptions consisting of a dye in combination with a colloid both having deeply penetrated the inner strata of the support, said dye in combination with said colloid being fast to the action of the liquids which are used in the subsequent treatment of the film."

In my opinion, plaintiffs herein are entitled to a patent upon these claims.

Counsel will prepare appropriate findings of fact and conclusions of law, and a judgment authorizing the Commissioner of Patents to issue a patent.