## RADIO CORPORATION OF AMERICA v. LORD et al.[*]

Circuit Court of Appeals, Third Circuit.
September 11, 1928.

No. 3789.

*Certiorari denied by Supreme Court 49 S. Ct. 83, 73 L. Ed. ——.

Buffington, Circuit Judge, dissenting.

Frederick P. Fish, of Boston, Mass., John W. Davis, Stephen H. Philbin, and Thurlow M. Gordon, all of New York City, and William G. Mahaffy, of Wilmington, Del., for appellant.

Samuel E. Darby, Jr., of New York City, Ernest R. Reichmann, of Chicago, Ill., and E. Ennalls Berl, of Wilmington, Del., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court restraining the Radio Corporation of America, hereinafter called the defendant, from enforcing directly or indirectly contracts for the sale of radio vacuum tubes embodied in paragraph 9 of the agreement between the defendant and its licensees, and denying defendant's motion to dismiss the bill for want of indispensable parties.

The plaintiffs are engaged in the manufacture and sale of vacuum tubes, known as audions, which are used in radio receiving sets. The suit was brought under section 16 of the Clayton Act (15 USCA § 26) to enjoin the defendant from enforcing paragraph 9 of its agreement with its licensees. The plaintiffs alleged that this paragraph violates sections 1 and 2 of the Sherman Act (15 USCA §§ 1, 2) and section 3 of the Clayton Act (15 USCA § 14). On filing the bill, a motion was made for an injunction pendente lite. After two arguments based on affidavits, counter and reply affidavits, the court granted the injunction, but stayed its issuance or operation pending this appeal.

Paragraph 9 of the license agreement provides that:

"Nothing herein contained shall be construed as conveying any licenses expressly or by implication, estoppel or otherwise to manufacture, use or sell vacuum tubes, except to use and sell the vacuum tubes purchased from the Radio Corporation as provided herein. The Radio Corporation hereby agrees to sell to the licensee and the licensee hereby agrees to purchase from the Radio Corporation the number, and only the number of vacuum tubes to be used as parts of the circuits licensed hereunder and required to make initially operative the apparatus licensed under this agreement, such tubes to be sold by the Radio Corporation to the licensee at the terms and at the prices at which they are then being sold by the Radio Corporation to other manufacturers of radio sets buying in like quantities for the same purposes. But the sale of such tubes by the Radio Corporation to the licensee shall not be construed as granting any licenses except the right to sell such tubes for use in, and to use them in, the apparatus made and sold hereunder."

The learned District Judge held that the provisions in this paragraph violate section 3 of the Clayton Act, which provides that:

"It shall be unlawful * * * to lease or make a sale or contract for sale of goods, * * * whether patented or unpatented, * * * on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, * * * of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce." 15 USCA § 14.

The conclusion reached by the District Court was based upon three propositions, which it found were established by the evidence. These are that paragraph 9 constitutes (1) a contract for the sale of goods, (2) on condition that the purchaser should not use or deal in the goods of a competitor or competitors of the seller, and (3) the effect of such contract for sale or such condition was "to substantially lessen competition or tend to create a monopoly in" radio vacuum tubes. The correctness of the court's conclusion depends upon whether or not these three propositions are sustained by the law and evidence, for section 3 of the Clayton Act requires that they be established in order to bring paragraph 9 of the agreement within the inhibition of that act.

The defendant says that section 9 of the agreement does not contain a contract for the sale of goods, within the meaning of section 3 of the Clayton Act, but is simply a license agreement, with lawful covenants, restrictions, and conditions of the license. The paragraph, however, tells its own story. It expressly provides that "the Radio Corporation hereby agrees to sell to the licensee and the licensee agrees to purchase from the Radio Corporation the number, and only the number, of vacuum tubes to be used as parts of the circuits licensed hereunder and required to make initially operative the apparatus licensed under this agreement, * * * at the prices at which they are then being sold by the Radio Corporation to other manufacturers of radio sets buying in like quantities for the same purposes." The Uniform Sale of Goods Act, in force in New Jersey, Pennsylvania, and many other states, defines a contract for the sale of goods as: "A contract to sell goods is a contract whereby the seller agrees to transfer the property in goods to the buyer for a consideration called the price." 4 Comp. Statutes of N. J. 4647. Such a contract is defined in Cyc. as "a contract whereby the seller agrees to transfer the property in goods to the buyer for a price

which the buyer pays or agrees to pay. A contact to sell is also termed an agreement to sell.'' 35 Cyc. 27. By whatever term the defendant calls the provisions contained in paragraph 9, they seem to us to express in apt language a contract for the sale of goods, within the meaning of section 3 of the Clayton Act.

However that may be, the defendant says that the so-called monopoly is lawful within the field of patented products, and that "a covenant which would be lawful in one license is equally lawful in 25 licenses, if its operation relates solely to the man-ufacture of the patented article itself.'' If it be.conceded that, as an independent prop-osition, this statement may be sound, yet, if the contract for sale is made on the condi-tion, agreement, or understanding that the purchaser shall not deal in the goods of his competitors, and the effect of the condition, agreement, or understanding may be to substantially lessen competition, or tend to create a monopoly, it is unlawful and pro-hibited by the Clayton Act. Section 3 of that act defines an illegal contract, "and the patent right confers no privilege to make contracts in themselves illegal, and certainly not to make those directly viola-tive of.valid statutes of the United States.'' United Shoe Machinery Corp. v. United States, 258 U. S. 451, 462, 42 S. Ct. 363, 68 L. Ed. 708.

A patentee, the defendant says, has the exclusive right to make and sell to li-censees, for their use in completing the li-censed apparatus manufactured by it, any element of the patented combination, even though that element is old and free from patent monopoly. The learned District Judge, on the authority of the case of Unit-ed Shoe Machinery Corp. v. United States, supra, overruled this contention. A li-censed combination need not consist of sep-arate patented elements, each of which is entitled to individual patent monopoly. It is the new *combination* that the law pro-tects. Some of the elements may be new, and patented, and others old, on which pat-ents have expired, or never patented. Of course, the law protects the individual pat-ented elements, as well as the new combi-nation composed of new and old elements. In such cases the patentable novelty con-sists in bringing together these new and old elements into a new combination, and not in the patentability of each element. Goss Printing-Press v. Scott (C. C. A. 3) 108 F. 253; United States v. American Bell Tel. Co., 167 U. S. 224, 249, 17 S. Ct. 809, 42 L.

Ed. 144; Leeds & Gatlin v. Victor Talking Machine Co., 213 U. S. 325, 29 S. Ct. 503, 53 L. Ed. 816.

A single old element, whose patent mo-nopoly has expired, cannot be put into a new patented combination as a constituent ele-ment, and thus have its individual monop-oly revived for 17 years more. This would be a new method of securing a patent, or a means of evading the patent law, by dou-bling the length of the life of a patent. A patent may not be secured on a single ele-ment by inclusion. The vacuum tubes are an element in the electrical circuits licensed under the contracts. It is these circuits, as such, and not the single unpatented ele-ments, that are protected. While the de-fendant has the exclusive right to manufac-ture, lease, and sell the combination, it does not have the right to withhold from the manufacture, use, and sale by others a single one of the elements, composing the circuits, which is no longer protected by a patent. In other words, a patentee may not prevent the individual manufacture, use, and sale of a single unpatented element, which the world is free to make, use, and sell, by simply including it as an element in a new patented combination. To put it differently, the inclusion in a patented com-bination of an unpatented element does not give the patentee of the combination a mo-nopoly of each element, and the exclusive right to make, use, and sell that element, independent of the combination. So long as the patent covering vacuum tubes was in existence, the patentee of this element of the combination was protected, and it could not be included in the combination without a license to do so; but, when the patent on this tube element expired, the rights, which were theretofore vested in the patentee, be-came the property of the public, and not of the patentee of the combination.

The defendant says that, for the sake of uniformity, efficiency, and durability, it is desirable to have these particular tubes, made by it, placed in these licensed sets or circuits to make them initially operative. This may or may not be true, but, if true, it makes no difference, for excellence of product does not justify the evasion or vi-olation of the provisions of the Clayton Act. As the Supreme Court said in the case of United Shoe Machinery Corp. v. United States, supra:

''No matter how good the machines of the United Company may be, or how effi-cient its service, it is not at liberty to lease its machines upon conditions prohibited by

a valid law of the United States. Congress has undertaken to deny the protection of patent rights to such covenants as come within the terms of the Clayton Act, and if the statute is constitutional, the sole duty of the court is to enforce it in accordance with its terms.''

■ A patentee may sell his patented product at any price he desires, to whomsoever he will, and under whatever restrictions he conceives to be advantageous, provided he does not violate the law in doing so. Consequently we think that the learned District Judge properly held that this license agreement is a contract for the sale of goods, and that its inclusion in a license agreement for a combination does not remove it from the inhibitions of the Clayton Act, which applies to goods ''whether patented or unpatented.''

■ Was the contract for the sale of vacuum tubes made on condition that the purchaser should not use or deal in the goods of a competitor of the seller? The District Judge found that there was no ''explicit condition or agreement to that effect,'' but that the evidence before him was conclusive that the practical effect of paragraph 9 was to prevent the licensees from using or dealing in tubes other than those sold by the defendant; that its provisions were as effective as express covenants would be, and practically compelled the use of the tubes of the defendant in all receiving sets made by the licensees, except upon risks which manufacturers will not incur; and that such agreements were prohibited by the Clayton Act. Standard Fashion Co. v. Magrane-Houston Co., 258 U. S. 346, 355, 42 S. Ct. 360, 66 L. Ed. 653; United Shoe Machinery Corp. v. United States, 258 U. S. 451, 457, 458, 42 S. Ct. 363, 66 L. Ed. 708.

The first part of paragraph 9 absolutely and expressly requires the licensees to purchase tubes from the defendant, but the second part limits this restriction to the tubes used to make initially operative the apparatus licensed under the agreement; that is, the licensee may purchase tubes, not required to make the circuits initially operative, from others than the defendant. The third part of the paragraph restricts the licenses granted to the right to sell the tubes for use in the apparatus made and sold under the agreement. The first and third parts of the paragraph restrict and hedge in the contract for the sale of the tubes provided in the second part.

The licensees are all manufacturers of radio sets, and the only tubes which they ordinarily buy are those required to make initially operative the apparatus licensed under this agreement. The licenses granted by the defendant to the licensees cover ''all of the United States letters patent useful in tuned frequency receivers * * * with respect to which it has a right to grant licenses.'' It is alleged that ''there are 38 patents involved.''

This assumed legal right to include vacuum tubes as a protected element in the patented combination, and the grant of licenses for the combination with restrictive clauses as to the tubes, constrain the licensees to deal exclusively with the defendant and to refrain from dealing with its competitors because of the belief of licensed freedom and protection on the one hand, and of the fear of infringement litigation on the other. The provisions of this paragraph, based upon this assumed legal right, as the learned District Judge said, ''are quite as effective as express covenants could be, and practically compel the use of tubes of the defendant in all receiving sets made by the licensees, except upon risks which manufacturers will not willingly incur.''

■ Was the effect of the contract for sale or condition, agreement, or understanding to substantially lessen competition or did it tend to create a monopoly? The court found that the facts disclosed by the record before him indicated that ''the contracts for the sale of tubes embodied in the license agreements are an efficient instrumentality lessening competition substantially, and tending, as well, to make the monopoly of the defendant * * * complete.'' This contract or understanding between the defendant and the licensees has actually resulted in the monopoly of the radio tube business by the defendant to the extent of somewhere between 70 per cent. and 95 per cent.

The defendant intimates that it had a large part of the business before the contract was made, but the plaintiffs say that their business and the business of others generally has decreased and been taken by the defendant and its licensees, and that the results show that competition has been substantially lessened and a monopoly created. This enforced introduction of defendant's tubes to the patrons of the licensees gives the defendant a big advantage over other manufacturers of tubes in the first instance for these patrons naturally replace

old tubes with the same kind that were in the sets when purchased. This puts other manufacturers of tubes at a great disadvantage, which they cannot overcome so long as the defendant is permitted to enforce the provisions of this paragraph. The District Judge found that the effect of the contract, condition, agreement, or understanding was to substantially lessen competition, and tended to create a monopoly. We think that the evidence justified that finding.

 The defendant contends that the bill should be dismissed for want of indispensable parties. The rights of the licensees, it says, are being adjudicated, and they are indispensable parties, and should have been joined. So far as it has been called to our attention, no licensee has asked to be made a party. Their silence would indicate that they do not share the feeling of the defendant. An indispensable party is one who bears such relation to the suit that no decree can be entered in the case which will do justice to the parties before the court without injuriously affecting his rights. The covenants in the contract before us were inserted for the benefit of the defendant, and are of such character that the rights of the licensees will not be injuriously affected by the decree. It is the desire of the defendant to sell tubes to the licensees. If the decree is affirmed, the defendant may sell to the licensees as at present, and the licensees will purchase from it, if it is to their advantage, but, if it is not, they will be free to purchase elsewhere. We do not think that they were indispensable parties, whose rights were injuriously affected by the decree. The case of the United Shoe Machinery Corp. v. United States, supra, settles this contention against the defendant.

The decree is affirmed.

BUFFINGTON, Circuit Judge (dissenting). This controversy turns on certain basic facts. First, we are here dealing with a patented combination, to wit, a radio receiving set. That patented combination consists of two co-operating elements—first, a certain electrical mechanism; and, second, a radio tube. Standing alone and disassociated from this patented combination, every one is free to buy, sell, barter, and use a radio tube, and such a commercial tube I herein style a "noncombination tube." With such "noncombination tube" this case has no concern. But when such "noncombination tube" is taken out of that free commercial field, and is associated in combination with the electrical mechanism in the patented combination here involved, it ceases to be the old "noncombination tube" of unrestricted commerce, and becomes the "combination tube" of restricted patent use. To my mind much of the confusion in this case arises from regarding these "noncombination tubes" and the "combination tube" as one and the same thing. This leads to the divergent views of the plaintiff and defendant. For here comes the parting of the ways.

The plaintiff says: "Radio tubes, because old and an article of commerce, we have an unrestricted right to sell and use in any way, and the defendant prevents such unrestricted use and therefore suppresses competition." On the other hand, the defendant says: "True, you have a right to sell and use a radio tube so long as it is a 'noncombination tube,' but when you combine your 'noncombination tube' with my electrical apparatus and thereby use your 'noncombination tube' in a field which did not exist in fact or commerce till my patent created such field, you have left the field of 'noncombination tube' commerce, and by a 'combination tube' use you have entered the field of a patent monopoly, the law gives me as a reward for my new, useful, and inventive combination use of the old 'noncombination tube' of commerce." Now, which of these contentions is the true view?

Turning to the facts of this case, we have a patent for a radio receiving set which consists of a patent for a combination of a radio tube and certain electrical appliances, with the right to make and vend the patented combination. No one can deny to the patentee the right to select the material or articles he shall assemble and use in the making of that article, and, having this unquestionable right of selection, he can exercise it by requiring his licensees, in making the patented article, to use such materials or articles as he selects. If the patentee does not work his patent and put his patented device on the market, no one could contend he was thereby restricting commerce, for there would be no commerce in his device to restrict. So, also, if in making such article for the market the patentee and his licensees determine what materials or articles should be used, how could such presale selection be regarded as a commercial restriction in the field of commerce be-

fore the patented combination was completed and, by subsequent sale, entered such field? There is here no tying up contracts, no restricted use, no replacement or royalty provisions, in fact, no conditions of any kind, by which the patentee seeks to dominate the patented article after it has by sale entered the field of commerce.

In the last analysis this case turns on the purpose and meaning of the Clayton Act. Now it seems to me that such unreasonable tying up of patented articles after they had entered into the field of commerce, and thus extending the limited monopoly of a patent into the bridling of general commerce, was the mischief Congress had in view in passing the Clayton Act, and it had no intent to strike down by implied repeal the well-known right of a patentee, and his assigns as well, to making his patented article of such material as he saw fit in pursuance of the broad provision of the patent law, viz.: "Every patent shall * * * grant to the patentee, his heirs or assigns, for the term of 17 years, of the exclusive right to make * * * the invention or discovery." 35 USCA § 40. This right of the patentee to select his own materials was well considered and logically vindicated in Westinghouse Electric & Mfg. Co. v. Diamond State Fibre Co. (D. C.) 268 F. 126, where the right of the assignee of a patent for a car gear to contract with and require licensees to use certain materials furnished them by the owner of the patent; the court there saying:

"The right to make the parts and material entering into the patented article, and to exclude others from making them, if such parts and material are unpatented as in this case, would seem to be an inevitable adjunct of the patent and a part of the patent monopoly. There is no evidence in this case that the patentee or his assignee, the plaintiff, ever surrendered this monopoly to the public. I do not see, therefore, that the effect of granting a license to manufacture the Conrad gears, but reserving to the licensor the right to continue to make the gear material, was to surrender to the public the licensor's monopoly to make the material entering into such gears, or to create a 'line of commerce' within the meaning of the Clayton Act."

In addition to the foregoing, I am of opinion this contract should not have been set aside until all parties, to wit, part owners and licensees, were made parties and heard.