## BASSICK MFG. CO. v. UNITED GREASE GUN CORPORATION.

### No. 3796.

District Court, E. D. New York.
August 23, 1929.

Stephen H. Philbin, of New York City (Lynn A. Williams, of Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., of counsel), for plaintiff.

Morris Kirschstein, of New York City, for defendant.

CAMPBELL, District Judge.

This is a suit for the alleged infringement of patent No. 1,307,734, issued to Arthur V. Gullborg, for lubricating means, dated June 24, 1919, on an application filed December 21, 1918; and patent No. 1,475,980, issued to Oscar Zerk, assignor to the Allyne-Zerk Company, of Cleveland, Ohio, for lubricating apparatus, dated December 4, 1923, on an application filed November 21, 1922.

The title to each of these patents is vested in the plaintiff.

Defendant has interposed an answer setting up the defenses of invalidity and noninfringement.

The plaintiff complains that the defendant has manufactured and sold lubricant compressors terminating in couplers and nozzles, adapted and intended for use in conjunction with the Alemite and Alemite-Zerk fittings sold by the plaintiff, and that these acts contribute to the infringement of claims 14 and 15 of the Gullborg patent, No. 1,307,-734, and claims 2, 3, and 5 of Zerk patent, No. 1,475,980, which read as follows:

Gullborg patent, No. 1,307,734:

"Claim 14. The combination with a grease cup comprising a tubular member having one end flanged inwardly to provide a closure seat, a closure, a pin extending through said tubular member and from both sides thereof, and a spring confined between said pin and closure, and tending to hold said closure on its seat, of a grease pump having a discharge conduit, and means coacting with the ends of said pin for detachably connecting the discharge end of said conduit with said grease pump."

"Claim 15. The combination with a grease cup comprising a tubular member having a closure seat, a closure, a pin extending through said tubular member and from both sides thereof, and a spring confined between said pin and closure, and tending to hold said closure on its seat, of a grease pump having a discharge conduit, and means co-acting with the ends of said pin for detachably connecting the discharge end of said conduit with said grease cup."

Zerk patent, No. 1,475,980:

"Claim 2. In a lubricating apparatus, the combination with a lubricant receptacle element of a lubricant reservoir for supplying lubricant thereto, means to put the lubricant in the reservoir under pressure, a lubricant feeding nozzle element, said reservoir communicating lubricant under pressure thereto, said receptacle element and said nozzle element having cooperative substantially non-compressible contact faces and openings therethrough, the nozzle contact face having a concavely spherical surface, the other contact face having a dirt cutting circumferential edge portion adapted to be embraced within the spherical surface of the nozzle face and providing the sole contact therewith when the nozzle is pressed against the receptacle element from any one of a plurality of angularly different directions, to make a sealed, substantially non-yielding, lubricant conducting connection between the face openings."

"Claim 3. In a lubricating apparatus, the combination with a lubricant receptacle element of a lubricant gun for supplying lubricant under pressure thereto, said gun having a lubricant feeding nozzle element, said receptacle element and said nozzle ele-

ment having cooperative substantially non-compressible contact faces and openings therethrough, one of said contact faces having a concavely spherical surface, the other contact face having a dirt cutting circumferential edge portion adapted to be embraced within the spherical surface of the other face and providing the sole contact therewith when the nozzle is pressed against the receptacle element from any one of a plurality of angularly different directions, to make a sealed, substantially non-yielding lubricant conducting connection between the face openings, and an outwardly inclined guide for one of said elements to direct the other element contact face portion thereto."

"Claim 5. In a lubricating apparatus, the combination with a lubricant receptacle of a lubricant gun comprising a container and a rigid lubricant feeding nozzle secured directly thereto, said receptacle and said gun nozzle having cooperative substantially non-compressible contact faces and openings therethrough, the nozzle contact face having a concavely spherical surface, the receptacle contact face adapted to be received within and to engage the concave spherical surface of the nozzle face and having a dirt cutting circumferential edge portion providing the sole contact therewith, when the gun is directed against the receptacle and manual pressure exerted against the container from any one of a plurality of angularly different directions, to make and manually maintain a sealed, substantially non-yielding, lubricant conducting swiveling connection between the face openings."

The prior art relied upon by the defendant does not require an analysis, as every one of the prior art patents referred to in the defendant's brief were before me in the case of the Bassick Mfg. Co. v. Ready Auto Supply Co., 22 F.(2d) 331, and have been considered by many other courts, with the exception of the publication "Omnia," and as to that it is sufficient to say that it is merely a popular description of the subject-matter disclosed in the French and British Seng patents, Nos. 468,869 and 3028, respectively, and adds nothing to the disclosure of these patents.

In a long line of cases these patents have been held to be valid, and nothing has been presented in the instant suit which causes me to find otherwise.

The patents in suit are valid.

The patents in suit being valid, the defendant's first bayonet coupler, as well as its Zerk adapter, are contributory infringements of the plaintiff's patents herein in issue, and

this does not appear to be disputed by the defendant; but the defendant does present as its main defense the contention that its second structure does not infringe, and that defense will be considered.

Defendant contends that claims 14 and 15 of Gullborg patent, No. 1,307,734, should be limited by reading or importing into them the details of the suction effect coupler construction, but I find no justification for this contention.

The suction effect limitations are present in claims 1, 2, 3, 4, 7, and 8, and they were held to be valid by the Sixth Circuit Court of Appeals, in Lyman Mfg. Co. v. Bassick Mfg. Co., 18 F.(2d) 29, and that court also said that any claim which must depend solely for its novelty upon the pressure produced adhesion was invalid, and this was held to be true of claim 12.

Claims 14 and 15 do not specify the means whereby the pressure produced adhesion was attained, but they contain other elements which are not present in claims 1, 2, 3, 4, 7, 8, or 12, and for that reason were held to be valid.

These claims 14 and 15 were sustained by the Sixth Circuit Court of Appeals as covering the combination of elements which make up the plaintiff's Alemite pin fitting and a compressor, a discharge conduit and a coupler having "means co-acting with the ends of said pin for detachably connecting the discharge end of said conduit with said grease cup."

The prior art does not limit these claims so that the details of the suction effect coupler construction must be read into them to save them from anticipation, and they were not limited by any action of the Patent Office, as these claims were made and finally allowed without change of the words used in the application for Gullborg patent, No. 1,-307,733, where no suction effect coupler was disclosed. The claims in question were by amendment taken from the application which eventuated in patent No. 1,307,733 and made part of the application which eventuated in patent No. 1,307,734 in suit.

There are three phases to the Gullborg invention, as follows:

(1) The complete combination of pin fitting compressor and coupler.

(2) The particular form of the pin fitting part of the combination, whereby a better and stronger pin fitting can be manufactured for half the cost of an inferior pin fitting made along other lines.

(3) The particular form of the coupler part of the combination whereby a spring pressed sliding, sealing member licks up any nubs of grease which would otherwise be left upon the head of the fitting and the face of the sealing disk at the moment of detachment.

Under the rules of the Patent Office, all of the phases of the invention could not be claimed in a single patent, therefore, on June 24, 1919, two patents were issued, patent No. 1,307,733 containing claims to the pin fitting alone as an article of manufacture, and patent No. 1,307,734 containing claims covering the entire combination; and also claims covering the compressor and coupler parts of the complete combination alone and independently of any pin fitting part. Claim 7 covers the compressor and coupler parts of the complete combination, without any reference to the pin fitting part. Claims 1, 2, 3, 4, 8, 14, and 15 describe the complete combination, including compressor, coupler, and fitting, but differ greatly in scope. Claims 1, 2, 3, 4, and 8 are comparatively narrow in their description of the coupler part of the complete combination. Claims 14 and 15 are comparatively specific in their description of the pin fitting part of the complete combination, but relatively broad in their description of the coupler part of the combination. All of these claims are broad in their description of the compressor part.

By reason of the variation in the scope of the claims, the sale of pin fittings in which the pins become mere lugs projecting from the sides of the tubular member, and in which the spring abutment is otherwise furnished, has been held to constitute a contributory infringement of such claims as 1, 2, 3, and 4, and the sale of compressors and couplers which do not have the spring pressed sliding, sealing member has been held to constitute a contributory infringement of the claims such as 14 and 15. And this appears from an examination of the structures of the various parties therein.

The Gullborg patent here in issue has been passed upon three times by the Circuit Court of Appeals of the Sixth Circuit, first in Lyman Mfg. Co. v. Bassick Mfg. Co., supra.

Six cases were before the court on that appeal, and numerous claims of the patent and numerous issues arising under the claims, but in one decision the court set forth accurately the relationship between the various claims before it, and the scope to be given those claims. The necessity of considering the many issues before the court in a relatively short opinion makes possible a misconstruction of the decision if parts thereof be selected which pertain to one issue or claim, unless care is used not to apply them to other issues or claims to which they do not relate, and it is by reason of failure to use such care that defendant has placed its erroneous construction on that decision.

It is not necessary, nor does space permit a recital of the various portions of that decision which are cited to show a limitation of claims 14 and 15 to a combination of which the coupling must embody the construction by which the pressure is employed to effectively seal the connection and means for creating the suction effect described in other claims, because it seems clear to me that the Circuit Court of Appeals in the Sixth Circuit, in that decision, made no such finding.

This more clearly appears in the second decision of that court, which denied a petition for a rehearing.

In that decision the court, among other things, said, "In view of the holding as to claims 14 and 15 of the Gullborg patent in suit in the O. K. case, the question is now immaterial in that case." [1]

---

[1] No opinion was filed on denial of rehearing. The language here quoted is from a brief statement preceding the order of the court. This statement and order were as follows:

It appearing that the question whether the compressor is an element of claim 12 of the Winkley patent can better be decided upon a later proceeding in one of these cases or some other case where the point is more fully presented, and that, in view of the holding as to claims 14 and 15 of the Gulborg patent in suit in the O. K. case, the question is now immaterial in that case—as well as in the Larkin case, if the District Court modifies its decree in that case upon this point; and it further appearing that the point now for the first time made as to the validity of the Gullborg patent is ruled by our decision in McGregor v. Vaco Co., 2 F.(2d) 655.

Ordered:

(1) That the application for rehearing in all above cases be and is denied.

And upon the application of appellant in 4766 for an order to show cause why appellee should not be punished for contempt, it appearing that appellee in that case is urging its vendees or agents to sell their stock of infringing articles in haste and before injunction can issue pursuant to the opinion of this court, and it also appearing that the right of this court to entertain contempt proceedings in this matter at this time is not clear, but that infringement as to repairs and replacements should be enjoined without de-

"The holding as to claims 14 and 15 of the Gullborg patent in suit in the O. K. case," to which the court referred in that decision, was that the sale of a compressor alone, or a compressor and coupler adapted and intended to use in conjunction with the Alemite pin fittings of the Bassick Company, was a contributory infringement which must be enjoined.

The effect of this holding was that, inasmuch as the O. K. Company could not sell its compressors alone, or its compressors and couplers alone, under claims 14 and 15 of the Gullborg patent, there was no necessity of determining whether the O. K. Company was free to sell these compressors, in so far as the Winkley patent was concerned.

One of the O. K. Company's couplers, the sale of which was enjoined as being designed and intended for use in conjunction with the Alemite pin fittings of the Bassick Manufacturing Company (Exhibit 109 in that suit), had no sliding or spring pressed sealing member, but was merely a coupler shell having helical camlike surfaces, which could be screwed over the projecting ends of the cross pin of an Alemite fitting in such a way as to draw a fixed and rigid gasket into contact with the head of the pin fitting.

That coupler was legally identical with the later coupler of the defendant of which complaint is made in this suit, and which is shown in Exhibit 16 and Exhibit H, and was described upon the trial of the instant suit, as follows:

"It is mounted upon a tubular extension 12 which makes a threaded connection on the rear end of the hose and has an enlarged head 45 at the forward end through which communication is established with the grease cup. The coupler comprises a tubular housing 40, open at its forward end as at 42, and having two diametrically opposite slots for receiving the pin 28 of the pin fitting. A nut or actuator is threaded at 52 into the rear end of a sleeve 51, of which the forward end is threaded into the housing 40. A sleeve member 50 is interposed between the rear nut or actuator 53 and the head 45 of the tubular member 12."

The O. K. Company coupler (Exhibit 109 in that case) should not be confused with another O. K. Company coupler (Exhibit 107 in that case) which that company at one time endeavored to manufacture and sell for use in conjunction with a different kind of fitting manufactured by that company, viz., a screw threaded fitting and a screw threaded coupler, which in a general way followed the construction illustrated in the Alley British patent of the prior art.

It was the last-mentioned fitting and coupler that the Circuit Court of Appeals for the Sixth Circuit referred to when discussing the Winkley patent there in suit, where it said: "It may be said, as usual in such cases, that the defendants are at liberty to use a screw thread and gasket union. One of the defendants tried to, but gave it up, and adopted the secondary sliding element, giving the automatically adjustable intensive seal."

This language, when considered with reference to the entire record and the exhibits in the case, shows that the court in its decision did not sanction and approve the manufacture and sale of compressors having couplers containing "a stationary packing, crowded against its support by an advancing screw head," for use in conjunction with the Alemite pin fittings of the Bassick Manufacturing Company.

Following the first and second decisions of the Circuit Court of Appeals in the Sixth

lay unless proper security be given, and that in 4571 and 4572 the same course should be taken:

It is further ordered:

(2) That the order to show cause asked for by appellant in 4766 be refused.

(3) That the usual mandates issue forthwith in all the cases, but with specific instructions to the court below forthwith to issue its supplementary injunctions in both O. K. and Larkin cases expressly including in their prohibitions fittings or parts intended for contributory infringement, according to the tenor and effect of the opinion of this court as to repairs and replacements—provided,

(4) That if defendant in either main case below shall, within thirty days from this date, file in the Supreme Court its petition for certiorari to review any part of our conclusions and shall present to the District Court its sufficient bond conditioned that, if the judgment of this court is not reversed by the Supreme Court, the defendant will pay to the plaintiff all damages suffered or profits earned or lost resulting from the infringement, after this date, by such defendant or by any of its vendees or agents, of any rights under the patent law which the opinion of this court awarded to plaintiff—thereupon, the District Court may suspend such injunction in its discretion. Such bond shall be subject to the approval of such court as to its amount, form, and sufficiency. That court may from time to time continue such suspension, upon the giving of such further bonds, if any, as it may think advisable, but not beyond the termination of such proposed review or of effort therefor.

Circuit, supra, equipment legally identical with that here in issue has been passed on in five different cases, either on motions or trials brought in United States District Courts, as follows:

Southern District of Ohio, Western Division, Bassick Manufacturing Company v. O. K. Manufacturing Company, et al., by Judge Hickenlooper.[2]

Northern District of Illinois, Eastern Division, Bassick Manufacturing Company v. Larkin Automotive Parts Company, by Judge Lindley. 19 F.(2d) 939, 23 F.(2d) 92.

Southern District of New York, The Bassick Manufacturing Company v. James Martin, by Judge Winslow.[2]

Southern District of New York, Bassick Manufacturing Company v. C. P. Rogers & Co., by Judge Thacher. 26 F.(2d) 724.

Western District of Tennessee, Western Division, Bassick Manufacturing Company v. R. M. Hollingshead Company, by Judge Anderson.[3]

in four of which it has been found that claims 14 and 15 of the Gullborg patent in suit were infringed by the manufacture and sale of equipment legally identical with the later device of the defendant in suit, and but one has held to the contrary.

I cannot agree with the adverse holding of Judge Thacher in Bassick Manufacturing Company v. C. P. Rogers & Co., in the United States District Court for the Southern District of New York [26 F.(2d) 724], on a motion for a preliminary injunction, because my reading and construction of the decision of the Circuit Court of Appeals in the Sixth Circuit differs radically from his, as I have hereinbefore shown, and principally because, in my opinion, claims 14 and 15 are comparatively specific in their description of the pin fitting, relatively broad in their description of the coupler part of the combination, and broad in their description of the compressor part; and in that those claims are not limited to couplers which have the spring pressed sliding, sealing member, for which I believe the decision of the Circuit Court of Appeals, Sixth Circuit, in Lyman Mfg. Co. v. Bassick Mfg. Co., supra, is authority.

Of course the compressor is old, and it was not specifically patented by the plaintiff, but the plaintiff does not make up and assemble any complete combination of compressor, coupler, and pin fitting, but separately catalogues prices, and sells the pin fittings, couplers, and compressors to make up the combinations claimed in the patents in suit, leaving it to the purchaser to complete the combination.

This character of combination was sustained in Leeds & Catlin v. Victor Talking Mach. Co., 213 U. S. 301, 29 S. Ct. 495, 53 L. Ed. 805; Id., 213 U. S. 325, 29 S. Ct. 503, 53 L. Ed. 816.

The right of the defendant to manufacture and sell its type of compressor, if equipped to perform useful service other than in conjunction with the Alemite or Zerk type fittings, no one can deny, because the plaintiff does not seem to have a claim for the compressor in and of itself, and the same may be said of defendant's later style of coupler. But the evil is in equipping the compressor with, or adapting it to be equipped with a conduit and bayonet coupler or nozzle, which, as with the defendant's later type of coupler, not only makes possible its completing the combination of the plaintiff's Gullborg patent in suit, No. 1,307,734, but was evidently intended for that purpose.

This constitutes contributory infringement.

Contributory infringement by the defendant has been shown.

Defendant contends that plaintiff is barred from maintaining the suit as to the Gullborg patent by reason of neglect and unreasonable delay in filing the disclaimer as to claim 12, but this contention was not sustained.

The opinion of the Circuit Court of Appeals of the Sixth Circuit, holding claim 12 of the Gullborg patent in suit invalid, was filed on March 23, 1927.

Petitions for rehearing were filed April 6, 1927.

Plaintiff's attorneys had been informed that petitions for writs of certiorari would be filed. This is confirmed by the reference of the Circuit Court of Appeals of the Sixth Circuit, in its opinion of May 13, 1927, to the procedure which should be followed in the event that such petitions for writs of certiorari were filed. (See footnote, supra.)

Petitions for writs of certiorari to the Supreme Court of the United States were filed August 12, 1927 (denied 275 U. S. 549, 48 S. Ct. 86, 72 L. Ed. 420), and the disclaimer was filed August 22, 1927.

I can find no unreasonable delay in waiting to see what were the grounds of the petitions, and what was the likelihood of their being granted. Panama R. R. Co. v. Napier

---

[2] Memoranda.

[3] Orally.

Shipping Co., 166 U. S. 280, 17 S. Ct. 572, 41 L. Ed. 1004; Page Machine Co. v. Dow, Jones & Co. (C. C. A.) 168 F. 703; Motion Picture Patents Co. v. Yankee Film Co. et al. (C. C. A.) 187 F. 1007; Permutit Co. v. Harvey Laundry Co. (C. C. A.) 279 F. 713.

The case of Ensten v. Rich-Sampliner Co. (D. C.) 13 F.(2d) 132, cited by the defendant, is not in point. The delay in that case was for two years, and the facts are materially different.

The question of whether profits and damages shall be computed only on the couplers, and not on the grease gun as a whole, must be left for the accounting, as no proof was offered on the trial relative to the reasons for the salability of the defendant's equipment. [3] The contention of the defendant that plaintiff is not entitled to costs, because it failed before trial to limit its charge of infringement to claims 14 and 15 of the Gullborg patent in suit, and claims 2, 3, and 5 of the Zerk patent in suit, is not sustained.

That the plaintiff when requested notified defendant of the claims on which it would rely, including in addition to those last-mentioned claims 1 to 4 inclusive, and 6 and 8 inclusive, of the Gullborg patent, does not deprive plaintiff of the right to costs, because it was not until the actual commencement of the trial that the issue was limited to infringement of the defendant's later coupler, and as this coupler in itself does not infringe claims 1 to 4 inclusive, and 6 to 8 inclusive, of the Gullborg patent, the plaintiff naturally restricted itself to claims 14 and 15, which are infringed by both the earlier and later couplers of the defendant.

A decree may be entered in favor of the plaintiff against the defendant, with costs as indicated in this opinion, and for an injunction and accounting, with the usual order of reference.