## LORD et al. v. RADIO CORPORATION OF AMERICA.

District Court, D. Delaware. November 19, 1929.

No. 670.

John W. Davis, Stephen H. Philbin (of Fish, Richardson & Neave), and Thurlow M. Gordon, all of New York City, and William G. Mahaffy, of Wilmington, Del., for Radio Corporation of America.

Samuel E. Darby, Jr., of New York City, Ernest R. Reichmann, of Chicago, Ill., and E. Ennalls Berl (of Ward & Gray), of Wil-

mington, Del., for the De Forest Radio Company.

MORRIS, District Judge. This suit is now upon final hearing. At an earlier stage defendant's motion to dismiss the bill for want of indispensable parties was denied, and plaintiffs' motion for a preliminary injunction was granted. (D. C.) 24 F.(2d) 565, affirmed (C. C. A.) 28 F.(2d) 257, certiorari denied 278 U. S. 648, 49 S. Ct. 83, 73 L. Ed. ——. Since the entry of the interlocutory decree, De Forest Radio Company has been substituted as a party plaintiff in the place of Arthur D. Lord, its receiver, and, pursuant to stipulation between the parties, the bill of complaint has been dismissed as to the remaining plaintiffs.

The defendant now asserts, and the plaintiff denies, that the evidence adduced at the final hearing discloses that the licensees of the defendant are indispensable parties to the cause, and that clause 9 of the license is not a contract or agreement whose effect "may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

I think neither of these contentions of the defendant can be sustained. With respect to parties, the present record is not substantially different from that heretofore passed upon. The new evidence touching the second contention consists mainly of the fact that clause 9, which went into practical effect about July 1, 1927, was suspended or abandoned by defendant about July 1, 1928, the number of tubes sold by defendant during this and the contiguous periods, and the estimated sales of tubes by independent manufacturers during the same periods. These figures, which show a relative increase in the sales made by the independent manufacturers during the time clause 9 was in effect, may be tabulated thus:

|  | Independents | | R. C. A. | |
| Year. | Per Cent. | Bulbs for Tubes. | Per Cent. | Tubes. |
| --- | --- | --- | --- | --- |
| 1st half 1926 | 34 | 3,962,692 | 66 | 8,372,746 |
| 2d " 1926 | | 7,981,684 | | 14,357,053 |
| 1st " 1927 | 38 | 3,595,752 | 62 | 7,118,473 |
| 2d " 1927 | | 9,766,804 | | 15,136,781 |
| 1st " 1928 | 46 | 4,978,844 | 54 | 7,802,324 |
| 2d " 1928 | | 22,372,800 | | 23,687,937 |

The period during which clause 9 was in effect was a short one. That period was likewise abnormal, in that it was a period of changing conditions. It was during that time that the industry practically abandoned the battery or direct current operated sets for alternating current operated sets. Moreover, during that period some of the independent manufacturers, including the De Forest Radio Company, were compelled to sell tubes substantially below cost in order to continue their business. By reason of the brevity of the period clause 9 was in actual operation, and the abnormal conditions then existing, the figures above tabulated are not a true index of the effect that the clause would have had, had it been permitted to operate during the term provided by the license agreements. Pfeiffer, X Q. 125–128. Moreover, the relative sales made during the period the clause was in actual operation do not negative the crucial fact that the tying clause effectually prevented the independent tube manufacturers from manufacturing tubes for defendant's licensees, which, but for clause 9, the independent manufacturers would have been at liberty to do.

Consequently, since these licensees were among the largest manufacturers of radio receiving sets, and, during the year 1927, occupied with defendant, according to defendant's own showing, 62 per centum of the entire tube field, it is obvious, I think, that clause 9 not only had the effect of substantially lessening competition, but was, as well, of a character to enable the defendant, by increasing the number of its licenses containing that clause, to destroy practically all competition in the manufacture and sale of tubes. Such agreements section 3 of the Clayton Act (15 USCA § 14) reaches in their incipiency. Standard Fashion Co. v. Magrane-Houston Co., 258 U. S. 346, 42 S. Ct. 360, 66 L. Ed. 653.

An injunction must be granted.