## ALEMITE CORPORATION v. LUBRAIR CORPORATION.

### No. 2710.

Circuit Court of Appeals, First Circuit.

Jan. 3, 1933.

Supplemental Opinion Jan. 31, 1933.

There was no brief filed and no appearance at the argument in behalf of appellant.

Fish, Richardson & Neave, of Boston, Mass., and Lynn A. Williams, of Chicago, Ill., for appellant on motion to postpone hearing.

William Gates, Jr., of Boston, Mass. (Robert Cushman and Roberts, Cushman & Woodberry, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is a suit for contributory infringement of patent No. 1,307,734 to Gullborg for lubricating means dated June 24, 1919. Only two claims are in suit, Nos. 14 and 15. In the District Court the plaintiff moved for a temporary injunction on a record made up of ex parte affidavits filed by both sides, and various patents, drawings, and documents relating to the art. The District Judge denied the motion, and the plaintiff appealed from the refusal to grant the injunction. Judicial Code § 129 (28 USCA § 227).

The objects of the invention are stated to be "to provide novel *coupling* [italics mine] means for connecting the grease gun with parts to be lubricated," "to provide novel means for effectively sealing the joint between the coupling members," "to provide novel coupling members to be primarily secured to the parts to be lubricated," and certain other objects which are at present immaterial. Gullborg also invented a grease cup which was patented to him on the same date, June 24, 1919, the patent No. 1,307,733. The grease gun described in the patent in suit has novel features and is designed to be used in connection with the grease cup shown in the other patent.

At the time when Gullborg entered the field, pressure lubrication, by means of a grease cup on the part to be lubricated and a grease gun having a flexible connection adapted to engage the grease cup was well known. What Gullborg invented was an improved form of grease cup, shown in the other patent to him, and an improved grease gun to be used with his improved cup. The inventions were obviously by no means of primary character.

Pressure lubrication has become almost universal on automobiles. All leading makes of them are equipped with grease cups adapted to be used with grease guns. The defendant does not make or sell grease *cups*. It makes and sells grease *guns;* and it supplies them with a fitting which will engage the Gullborg cup but is not within the Gullborg patent. For present purposes the defendant's device may be regarded as something which per se anybody has the right to make and sell.

The claims in suit read as follows:

14. "The combination with a grease cup comprising a tubular member having one end

flanged inwardly to provide a closure seat, a closure, a pin extending through said tubular member and from both sides thereof, and a spring confined between said pin and closure, and tending to hold said closure on its seat, of a grease pump having a discharge conduit, and means co-acting with the ends of said pin for detachably connecting the discharge end of said conduit with said grease pump."

15. "The combination with a grease cup comprising a tubular member having a closure seat, a closure, a pin extending through said tubular member and from both sides thereof, and a spring confined between said pin and closure, and tending to hold said closure on its seat, of a grease pump having a discharge conduit, and means co-acting with the ends of said pin for detachably connecting the discharge end of said conduit with said grease cup."

■ The gist of these claims is a combination of the Gullborg grease cup patent 1,307,-733 with any grease gun. In other words, the plaintiff's contention is in effect that, if the owner of an automobile equipped with the Gullborg grease cups buys and uses the defendant's grease gun on them, he thereby creates the combination of the Gullborg patent in suit, and the defendant is liable for contributory infringement for supplying the grease gun.

The important question is whether the combination of Gullborg's grease cup with any grease gun makes a patentable combination. In Bassick Mfg. Co. v. Adams Grease Gun Corp., 52 F.(2d) 36 (C. C. A. 2), it was decided that this combination was patentable, reversing Judge Thacher (D. C.) 26 F. (2d) 722, 724, Id. (D. C.) 39 F.(2d) 904. Judge Westenhaver in the Northern district of Ohio, and Judge Hickenlooper in the Southern district of Ohio, made decisions on the question in accord with Judge Thacher's. Northern District, Eastern Division, Adjudication Book, vol. 1, p. 11; Southern District, Western Division, Adjudication Book, vol. 1, pp. 43, 44. In Lyman Mfg. Co. v. Bassick Mfg. Co., 18 F.(2d) 29 (C. C. A. 6), the question was left open, with an intimation that such a combination would not be patentable. In Bassick Mfg. Co. v. United Grease Gun Corp., 40 F.(2d) 549, Judge Campbell in the District Court sustained the broad interpretation of claims 14 and 15. The patent has been much litigated, and there are other decisions which it is unnecessary to refer to. The Supreme Court of the United States granted certiorari to the decision in Adams Grease Gun Corp. v. Bassick Mfg. Co., 285 U. S. 531, 52 S. Ct. 312, 76 L. Ed. 926, but the case was settled before being heard. In the conflict of judicial opinion we feel free to follow our own views.

The Gulborg grease cup is a separate invention, an independent entity. As above stated, it is the subject of a separate patent to him, and is fully covered by claims in that patent. It is not covered by any claim of the patent in suit, except as an element in a combination. The purpose of the Gullborg grease cup is to afford a means of getting a lubricant under pressure into a bearing; it can be used with other kinds of grease guns than those having the improved coupling of the patent in suit. The patent states that the Gullborg coupling operates somewhat differently and more efficiently than other couplings.

The ultimate question is whether, given this grease cup, it would be a patentable invention to combine it with a grease gun. "Claims are independent inventions." Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 319, 29 S. Ct. 495, 501, 53 L. Ed. 805. As has been said, pressure grease cups were old in the art. All of them were intended to be used with a grease gun, which could be temporarily connected to supply lubricant. The combination of a Gullborg grease cup with an unpatented grease gun has no new action or advantage, except such as is furnished by the improved grease cup. It lacks the more effective action of the Gullborg cup and Gullborg gun. Given the Gullborg cup, we are unable to see any invention in combining it with a grease gun, except perhaps with the Gullborg gun. The claims in suit seem to us clearly invalid unless restricted to such a combination. In any event the combination of the Gullborg cup with a grease gun was within the scope of the patent on the cup, not of the patent on the improved gun. The case seems to us similar in principle to Heald v. Rice, 104 U. S. 737, 26 L. Ed. 910; Underwood v. Gerber, 149 U. S. 224, 13 S. Ct. 854, 37 L. Ed. 710; Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 S. Ct. 627, 38 L. Ed. 500, and Carbice Corp. of America v. American Patents Development Corp., 283 U. S. 27, 51 S. Ct. 334, 75 L. Ed. 819. In the lower courts, Edison Electric Light Co. v. Peninsular Light, Power & Heat Co. (C. C. A.) 101 F. 831, and Radio Corp. of America v. Lord (C. C. A.) 28 F.(2d) 257,

certiorari denied, 278 U. S. 648, 49 S. Ct. 83, 73 L. Ed. 560, may be referred to.

In Heald v. Rice, supra, at page 755 of 104 U. S., 26 L. Ed. 910, it is said: "He uses Morey's device precisely as Morey's patent contemplated, and the Cornish boiler exactly as it was designed it should be used. And in the combination each operates separately, producing its own results. There was no inventive resource drawn upon to bring them together. Could not the owners of the patents for the straw-feeding attachment and the return-flue boiler unite their machines and work them together, in defiance of a claim for the combination? To ask the question is to answer it. Yet the case supposed does not differ from the case as it exists; for the *public* owned the right to the Cornish boiler, and was entitled to every use to which a *patentee* [italics mine] owning it might lawfully apply it." Matthews, J. In Underwood v. Gerber, supra, one question was whether the *combination* of a newly invented *coating* for making carbon paper (such as is used in typewriters), with *paper*, constituted a patentable claim. It was held it did not. In Morgan Envelope Co. v. Albany, etc., Paper Co., supra, one claim in question was for a combination of the *toilet paper roll* described in a former patent, with *mechanism for the delivery* of the paper to the user in an economical manner. It was said: "No question is made but that the mechanism of these patents, by which the paper is served out to the user, involves a patentable novelty." Page 430 of 152 U. S., 14 S. Ct. 627, 630. "The first defense raises the question whether, when a machine is designed to manufacture, distribute, or serve out to users a certain article, the article so dealt with can be said to be a part of the combination of which the machine itself is another part." Page 431 of 152 U. S., 14 S. Ct. 627, 630. The question was not expressly decided, but the court apparently regarded such a combination as unpatentable. In our opinion the claims in suit must be restricted to the specific combination shown in the plaintiff's patent; i. e., to the combination of the Gullborg grease cup with the Gullborg gun of the patent in suit. As so construed, the defendant does not infringe.

The doubt about our conclusion is created by Leeds & Catlin Co. v. Victor Talking Machine Co., supra. In that case one Berliner invented a new method of reproducing sounds by means of a new form of disc, which caused the reproducing stylus to move horizontally instead of vertically. He claimed this disc in combination with a reproducing stylus and machinery for propelling the disc — the well-known talking machine. The facts are not very clear either in the report referred to, or in the reports of the case in the lower court. Apparently the disc was not patented per se; nor was the machine, on which the disc was used, patented. The plaintiff relied on the combination claim as above stated. Leeds & Catlin manufactured discs (as they had the right to do) and sold them for use in machines which completed the combination of the claim. It was held that they were contributory infringers. In that case, the court was dealing with a basic invention and with the means used to carry it out. The disc was useless except in combination with the reproducing mechanism. It was the combination which produced the result, and carried out the invention of the patent, a very different situation from that presented here, where the combination alleged to infringe accomplishes no new result. The broad expressions in the opinion are to be read with the facts in mind and as limited by the Carbice Corp. Case, supra.

█ It is probable that under the Clayton Act (38 Stats. 730, § 3 [15 USCA § 14]) the plaintiff would not be permitted to impose as a condition of its licenses that its own grease gun should be used with the Gullborg grease cup, an indication of public policy which furnishes a reason for not construing the patent to accomplish that result unless the law so requires. This is probably so irrespective of the statute. See Carbice Corp. Case, supra; United Shoe Machinery Corp. v. United States, 258 U. S. 451–465, 42 S. Ct. 363, 66 L. Ed. 708, and Radio Corp. of America v. Lord, supra. It is highly undesirable that patents should be so construed and upheld as to give a monopoly on other things besides the subject-matter of the invention. Carbice Corp. Case, supra. In our opinion the law of contributory infringement has been carried quite far enough in the public interest. We are not disposed to extend it. As Judge Lowell said in the District Court, referring to the plaintiff's contention, "It isn't what the patent was meant to be. It is contrary to the idea of patents." From what has been said, it follows that in our opinion the District Judge was right in refusing to grant the injunction.

The final question is whether the case should be left to go to final hearing, or whether we should dispose of it on the record be-

fore us. It is not like a new patent. We have the advantage of many previous decisions in which it has been discussed, and the questions before us have been considered and decided by other courts. It is not improbable that the questions presented will have to be settled eventually by the Supreme Court as is indicated by the grant of certiorari in Adams Grease Gun Corp. v. Bassick, supra, 285 U. S. 531, 52 S. Ct. 312, 76 L. Ed. 926. The evidence before us on the question of the validity of the claims in suit appears to be complete. Our view, whether right or wrong, is clearly held. On the facts before us, the plaintiff's case is in our opinion unmeritorious, and the bill ought to be dismissed. Such action ought not, however, to be taken as long as there is any question as to the practical completeness of the plaintiff's evidence. We will deal with the matter as we did in Vulcan Soot Cleaner Co. v. Amoskeag Mfg. Co. (C. C. A.) 255 F. 88.

The present appeal is dismissed, with costs to the appellee.

Unless within ten days the plaintiff suggests to this court that it desires to present in the District Court further specified proofs to meet our present findings on the merits, an order will also direct the District Court to enter a final decree dismissing the bill, with costs to the defendant. If such suggestion is made, the additional proofs which the plaintiff desires to present will be considered, and we will then determine what the final disposition of the case should be.

Decree accordingly.

### Supplemental Opinion.

PER CURIAM.

The further proofs suggested by the plaintiff do not affect the points on which our decision rested. It is, however, possible that if, as seems not unlikely, the case should go to the Supreme Court, that court might find them more significant than we do. We are, therefore, of opinion that the case should stand for final hearing in the District Court, which hearing should be held at the earliest practicable time and without regard to engagements of counsel in cases outside this Circuit.

The decree of the District Court is affirmed, with costs to the appellee.